Sewall, C. J.
The plaintiffs were incorporated by an act of the
legislature, passed in November, 1808, subsequent to the date of the promise on which the defendant is charged in this action, brought in the name of the corporation.
Whatever may be the import or effect of this promise, the plaintiffs were not the promisees, the parties recognized by the defendant in his undertaking; for at the time of the promise the corporation had no existence. The promise is * not in [ * 115 ] a negotiable form; and it is not stated to have been in any manner assigned to the plaintiffs by any party, nominal or *112 actual; and as a chose in action, it is not assignable to the end of making it recoverable in the name of the assignee, unless this purpose may be considered as effected in this case by the especia! interposition of the legislature.
The act of incorporation contains, it is said, a provision to this effect: All moneys which had been subscribed for the use of an academy are given to the corporation, to be demanded, recovered, and received, by them. As this subscription was made, it may be presumed, with a view to obtain this incorporation, and to procure the establishment of the academy, which has since taken place and been erected, according to the laudable intention of the subscribers, the corporation, although not originally entitled by the terms of the subscription, may be authorized, in the acceptance by the legislature of these donations, and in a statute enacted for the purpose, to receive these donations; and if no person had a right of action before, this, originating with the statute, may be considered as vested in the corporation; In these respects, it is contended, the case at bar differs from the case of The Scots Charitable Society vs. Shaw. (2)
The defendant, however, objects not only the want of a plaintiff competent to exact the payment of a voluntary subscription, as a demand of right, but he says there is no evidence in the case to prove any promise or contract which the law will enforce.
This defence may be justly stigmatized as base and dishonorable ; it may be considered as unjust, when offered under circumstances like those now in evidence. Where the legislature have had a regard to subscriptions of funds, as in the case of academies and other public institutions, and concurring in the design, have accepted such donátions as inducements and considerations for valuable grants of public lands in aid of the professed purposes of the subscribers, it seems unreasonable and unjust that, after a grant of that kind has been thus obtained, there should be a . [ * 116 ] * power in the subscriber to retract with impunity, and to say that his promise of a donation, being voluntary, is no contract to be enforced against him.
On the other hand, it must be allowed that, if this was the legal import of the subscription when it was made, no subsequent act of the legislature, without some concurrence of the party to be affected by it, can give an efficiency to the subscription not originally intended or implied. There is, perhaps, a remedy, so far as a public injury is sustained. When the sovereign is imposed upon and deceived in a public grant, this is voidable; and the fact of decep *113 tian being proved, the grant will be declared void, if this redress is demanded.
The formal objection, so far as it goes to the competency of the plaintiffs, might be got over; because the legislative provision is not incompatible with any declared intention of the party charged. But, then, the want of a promisee is a circumstance of some weight in determining the value and import of the promise; and this defect, in this view of the case, the legislature aré not to be understood to have supplied. For a contract must be enforced according to the intentions, expressed or implied, of the party making it; and there seems to be no contract where there is no mutuality, and no consideration executed or executory. The defendant is not a trustee named in the act of incorporation, and personally he has not been a party to the subsequent proceedings of the incorporated society. He is therefore no party to the grant from the legislature; and the right of action, as to him, rests altogether upon the writing he subscribed before the corporation, now plaintiffs against him, had any legal existence.
This objection, to which the defendant finally resorts, is, we think, insuperable. The writing given in evidence in this case contains no proof of a contract; there is no mutuality, no parties, no valuable consideration. (a) It is a promise to give, connected with a similar promise by others to give to the same appropriation and purpose; but these promises * are not [ * 117 ] mutual among the subscribers, so as to make the promise of one, or the performance of it, a consideration for the promise of another. At the most, it was a donation to come into operation at the will of each subscriber, which has not been confirmed by any act of the party charged. There is no evidence of any such act in the case reported; and we cannot therefore confirm this verdict, without contradicting a course of decisions in cases where this question has occurred. (3)
The cases decided by this Court, where turnpike corporations were the plan tiffs, in suits for the moneys due upon subscriptions for shares, are in point. It is said that those decisions were upon the ground of another remedy provided by the legislature in the acts of incorporation. But that was not the sole ground, if it is in any respect a reason, for those decisions. The want of mutuality of a consideration is particularly stated in the cases of The New Bedford Turnpike vs. Adams, (4) and The Essex Turnpike vs. *114 Collins. (5) In all the cases cited in the argument for the plantiffs, the corporations existed when the subscription and engagement were entered into by the defendants. In the only case where the plaintiffs prevailed, there had been a meeting authorizing the proposal of a subscription, and certain terms, with peculiar advantages to the subscriber charged in that case. His subscription was upon that proposal; and the terms having been complied with, he was holden liable, upon.his express promise, not only to take shares, but to pay for them. In the cases of Adams and Collins, there had been no meeting of the corporations, to authorize any peculiar proposals or engagements; and this defect of mutuality is among the reasons assigned for the validity of their defence; and in the case of Collins that was the only reason; for in his subscription a promise to pay is expressed, as well as a promise to take shares.
The general principle is, that voluntary agreements and promises, however reasonable the expectation from them of gifts or [*118] disbursements, even to public uses, when made * without consideration, are not to be enforced as contracts; but where the promise is made in consequence of any thing yielded to the disadvantage of the promisee, and so where it is a proposal upon a consideration afterwards performed or gained to the promisor, this may import a sufficient consideration, (a)
In the case at bar, the defendant, actuated by a momentary fervor of public spirit, or anticipating, perhaps, some benefit to himself as well as to his neighborhood, undertakes to contribute a sum of money for the establishment and support of an academy. Others do the like. But the defendant afterwards repents, and will not confirm his stipulated donation. Here is nothing gained to him, or lost to any one else. No consideration proceeds from the public, or from any person who may become constructively entitled to this subscription; for the grant of the legislature was not made to the defendant, and he has not been a party to the acceptance of it. Upon the whole, if he insists upon retracting his subscription, we are of opinion that it is not a contract to be enforced in an action at law; and according to the agreement under which the case is reserved, the verdict is to be set aside, and a nonsuit is to be entered, and a judgment of costs for the defendant.
It was suggested in the argument, that some other of the subscriptions which gave birth to the Limerick academy are likely to be disputed, in the event of a successful defence by the subscriber charged in this action. Supposing the same circumstances through *115 out to be proved in those cases, particularly that the subscribers to be charged are not included in the corporation, and are not liable by reason of their actual acceptance of the grant from the legislature, they must be considered as having the same power which has been allowed to this defendant, of retracting their subscriptions; and actions against them would fail upon the principles of this decision. It may not be improper to observe further, however, upon this occasion, that a subscriber’s actual acceptance of the legislative grant, as if named or descriptively * included [*119] in the incorporation, he has been concerned in their subsequent proceedings, and had the advantages of a member of the corporation, — circumstances of that kind may be considered as entitling the corporation to the benefit of his subscription. To recover upon that title, we would suggest that an action upon an implied promise, as for money received to the use of the corporation, seems to be more suitable than an action upon a special promise, provable by the writing containing the subscription. All the cir-» cumstances supposed being in evidence, there would be just ground to say that the defendant holds money to the amount of his subscription, which he has made the property of the corporation, and which he cannot justly retain, (a)

Plaintiffs nonsuit.

 8 Mass. Rep. 532.

 Boutelle & Al. vs. Cowden, Admr. 9 Mass. Rep. 254--Bridgewater Academy vs. Gilbert, 2 Pick. 579.

 Com. Dig., tit. Action upon the Case upon Assumpsit, F, 8.

 8 Mass Rep. 138.

 8 Mass. Rep. 292.

 Boutelle & Al. vs. Cowden, Admr. 9 Mass. Rep. 254. — Bridgewater Academy vs Gilbert, 2 Pick. 579.

 Boutelle vs. Cowden, 9 Mass. Rep. 254. — Bridgewater Academy vs. Gilbert, 2 Pick. 579. — Sed vide Fisher vs. Ellis, 3 Pick. 332.— Trustees of the Church in Hanson vs. Stetson, 5 Pick. 506. — Bryant vs. Goodnow, 5 Pick. 928. — Salem Mill Dam Corporation vs. Ropes, 6 Pick. 26.— The Chester Glass Co. vs. Dewey, 16 Mass. Rep. 94. — The Trustees of the Farmington Academy vs. Allen, 14 Mass. Rep. 172. — Homes & Al. vs. Dana, 12 Mass. Rep. 190. — Amherst Academy vs. Cowls, 6 Pick. 427 Holmes vs. Higgins, 1 Barn. & Cresw. 74.