The opinion of the Court was read at a subsequent term, as drawn up by
Parker C. J.
The first objection to the verdict is, that no sufficient legal consideration for the note declared on was proved. As a consideration is expressly admitted in the note itself, the defendant, to avoid payment, must prove that, contrary to his admission, no value or consideration was in fact received. It seems that an actual benefit to the promisor, or an actual loss or disadvantage to the promisee, will be a sufficient consideration to uphold a promise deliberately made. Whether the consideration received is equal in value to the sum promised to be paid, seems not to be material to the validity. of a note, though in some cases it is held, that where there is a mistake as to the value for which the promise is made or a partial failure of the consideration, the jury may on trial give a less sum than is purported to be due on the face of the contract. And this has been recognised as law with us. But generally the parties are to be considered as competent judges .of the value of the consideration on which they make *434 their contracts. The objection in this case however goes to the whole of the consideration, so that the note is either nudum pactum in the whole, or is valid for the whole amount.
The original consideration of the note appears in the note itself, the promisor saying, it “ being the amount of my subscription to the charitable fund established in said Amherst for the classical education of indigent pious young men, and in pursuance of my covenants and engagements as expressed in the constitution of said fund by me subscribed, and dated the 23d day of May, 1818.” The note in suit is dated July 14th, 1819 ; more than a year after the date of the subscription. The defendant then, besides admitting generally a consideration under the terms “ value received,” specially admits that he was previously bound by a covenant and engagement voluntarily and deliberately made, with the intent and purpose of contributing to a fund which was to be appropriated to one of the most interesting and useful objects to which a man can apply the means with which Providence has blessed him, and yet he now attempts to avoid this re-iterated contract on the ground that there was no legal consideration for it. The law undoubtedly allows men, who have inconsiderately undertaken to bind themselves in contracts for which they have received no equivalent, to avoid such engagements by showing that they received nothing for them, or that the party with whom such contract was made would lose nothing by the non-performance of it. And this rule of law is frequently taken advantage of by those, who, without any pretence of mistake or inconsideration, have made their written promises. All that the Court can do to discourage such dishonorable conduct, is to require strict and unquestionable evidence that the case comes within the rule, the burden of proof, where a consideration is expressly admitted, being altogether on the defendant.
Was there a consideration for this note when it was given t In one sense there was not; that is, the promisor had received nothing at the time from the payees, which was of any pecuniary value. But it is quite sufficient to create a consideration, that the other party, the payee, should have assumed an obligation in consequence of receiving the note, which he was compellable either at law or equity to perform, unless the *435 promisor should be able to show when sued, that the payee had refused, or was unable, or had unreasonably neglected to perform the engagement on his part; in which cases a defence might be raised on the ground of a failure of the consideration. The defence is not put upon that ground, and so it must be presumed that the corporate body to whom the promise is made, has applied its funds to the purposes for which they were raised, or is ready and willing to do it whenever the different contributors to it shall have performed their engagements. In a court of equity of general jurisdiction, they could be compelled to discharge their duty. Without such a court they would be subjected to a loss of their charter, by refusal or neglect; for without doubt the legislature are the visitors of all corporations founded by them for public purposes, where there is no individual founder or donor, and may direct judicial process against them for abuses or neglects which by com mon law would cause a forfeiture of their charters. It certainly then would seem' that every contributor to the funds of a corporation authorized by law to receive moneys and apply them to the improvement, in most essential points, of the community to which he belongs, has his recompense in his share of the public good resulting from them ; and if by means of his contribution, or bis solemn promise to pay, the body to whom he has pledged his word should encounter expense, become under legal obligations, or otherwise pursue the intent and purpose of the legislature in granting them the charter, this is a sufficient legal consideration to support such a promise. In this respect the principles of common honesty cannot be at variance with the law of the land. It cannot be maintained that objects so important shall be frustrated, and that the agents appointed by the government to execute them shall be embarrassed and injured by the right of individuals to withdraw their contributions or refuse to comply with their promises, after the execution or during the progress of the work which they themselves set in motion. No case from the English or American reports has been cited to warrant so unjust a principle. Those which have been relied upon to sustain the defence in this case will be shown to have been whol *436 ly misapprehended, or at least to fall far short of the principle attempted here to be supported.
The doctrine contended for, that there must be a consideration for a written promise, cannot be disputed, and it seems to be the general result of the authorities, that although such consideration is expressly admitted, it may be denied and proved not to have existed, in a suit between the original parties to the promise. Intimations to the contrary of this were given in the case of Bowers v. Hurd, 10 Mass. R. 427; but though the facts of that case will, upon other principles, justify the decision, the intimations in regard to the conclusiveness of the admission of “ value received ” are not supported in their full extent by the authorities.
The first case in our books analogous to the present, is that of Boutell v. Cowdin, 9 Mass. R. 254. Unfortunately, the opinion of the Court in this case is stated in a much more loose manner than is usual, when the subject matter is of general import. The action was brought on a special written promise for value received to pay Boutell and others, deacons of the church of which the Rev. Titus T. Barton was pastor, in their corporate capacity, or their successors in office, the sum of one hundred dollars, for the benefit of the church aforesaid, &c. By the facts agreed it appeared, that the church spoken of in the promise consisted of the major part of the members of the church attached to the congregational society in Fitch-burg, the minority having, by an ecclesiastical council, been set off into a separate church, which was attached to a majority of the parish. The majority of the church, with the minority of the parish, continued together and settled the Rev. Mr. Barton as their pastor. It was proposed to raise a fund for his support by voluntary subscription, and a subscription paper was drawn up for that purpose, dated May 10th, 1804, to which the defendant’s intestate subscribed 100 dollars. Afterwards the subscribers generally gave notes for the amount of their subscription, and on the 26th of February, 1805, the note in question w7as given by the intestate for his subscription. The third point of defence was stated as an inference from the other two, viz. that this was a mere voluntary undertaking of the intestate without consideration. No benefit could ac *437 crue to him from the payment of the money, since the plaintiffs could not be compelled to pay it over, or appropriate it to the purpose intended, if they received it. Nor is there any consideration of damage to the plaintiffs, since they advanced nothing, and if they did not receive the money, they could never be called upon to pay it over. The whole opinion of the Court is summed up in these few words : — “ that three objections had been made to the verdict in this case. First, that the promise declared on was not binding, as being made without a valuable consideration. Second, that the deacons of the church were not, by the statute of 1785, made a corporation for the purpose of receiving and managing a fund established for the support of a minister. Third, that in this case the plaintiffs had not shown themselves to be the deacons of a church duly organized. On this last objection the Court gave no opinion. But they considered the two former ones as well founded, and on both grounds they set aside the verdict.”
It is quite sufficient to observe on this case, that if the second objection was sustained, to wit, that the deacons had no authority by law to receive and manage funds for the maintenance of a minister, the first of necessity must prevail ; for the very purpose for which the promise was made failed, the party to whom it was made having no authority to dispose of the money to the use for which it was promised. It is not therefore decided in that case, that a written promise made to a body legally existing and capable of applying the money, when paid, to the use intended, and compellable by law so to apply it after it has been received, is nudum pactum ; but only, that as those to whom the promise was made, were not capable in law of using the money for the purpose for which it was given, there was no consideration, and therefore the promise was void. We have been more particular in examining this case, because from the brief and unsatisfactory manner in which the opinion of the Court is stated, inferences have frequently been drawn from it, which we think the case does not warrant.
The next case which occurs in our books, in which this subject has been treated, is the Trustees of Phillips Limerick *438 Academy v. Davis, 11 Mass. R. 113. [See Rand’s ed. 119, note a.] The action was assumpsit for the sum of 100 dollars, and the evidence to support it was a subscription paper signed by the defendant and others, wherein they agree to pay or cause to be paid, the several sums subscribed, in money or materials, for erecting an academy in Limerick. It was agreed that an academy bad beeti built according to the terms of the subscription, and that the amount of his subscription had been demanded of the defendant. The subscription was made July 1st, ISOS. The plaintiffs were incorporated in November fol lowing, and the act provided that all lands, moneys or other property already subscribed, or which may hereafter be given, assigned or transferred to the said trustees for the use of the academy, shall be received and held by them, and their successors, in trust for the academy.
The objections to the recovery were, that the plaintiffs were not parties to the promise; that there was no mutuality, no consideration ; and the Court sustained these objections. It is stated in the opinion of Chief Justice Sewall, that “ it is a promise to give, connected with a similar promise by others to give to the same appropriation and purpose ; but these promises are not mutual among the subscribers. At the most it was a donation to come into operation at the will of each subscriber, which has not been confirmed by any act of the party charged.”
It is further observed, that “ the general principle is, that voluntary agreements and promises, however reasonable the expectation from them, of gifts or disbursements even to public uses, when made without consideration, are not to be enforced as contracts ; but where the promise is made in consequence of any thing yielded to the disadvantage of the promisee, and so where it is a proposal upon a consideration afterwards performed or gained to the promisor, this may import a sufficient consideration.” It is in the conclusion stated, that if the subscriber be named or descriptively included in the grant of incorporation, and has been concerned in the subsequent proceedings and had the advantages of a member of the corporation, the corporation may he entitled to *439 the benefit of his subscription, and he may be answerable upon an implied promise.
This case differs from the one before us in several particulars. The action was upon a subscription paper in common form, made before the existence of the party who brought the suit upon it, and there was no subsequent act recognising or confirming the defendant’s promise. In the present case there was a subscription; but afterwards, and when' the corporation was in being and activity, a promis spry note, referring to the former transactions and acknowledging a value for the promise, was given; and it "s upon this note that the present action is brought. The cases are entirely different. Surely the plaintiffs might confide in a promise thus deliberately made; and the confession of a consideration, after a knowledge of all the circumstances, ought not to be avoided but by proof of incapacity on the part of the promisees to apply the money as was intended, or an absolute refusal or neglect on their part to do it.
The next case touching this subject is that of the Trustees of Farmington Academy v. Allen, 14 Mass. R. 172. It was assumpsit to recover the amount of a subscription towards the funds of that academy. The subscription paper was drawn up and signed before an act of incorporation passed the legislature. The money was payable, by the terms of the subscription, to any persons who should be appointed trustees by the legislature. The trustees subsequently so appointed were the plaintiffs. As the case stood upon the count on the subscription paper, it was not to be distinguished from the case before cited of Limerick Academy v. Davis; but the money counts were added, and it being agreed, that after the incorporation, the trustees appointed a committee to erect a building, and the defendant, upon being called on for a part of his subscription, delivered on account of it some shingles to be used on the building, the Court held this to be a sufficient recognition of the promise, and the plaintiffs recovered to the extent of the subscription. It was said by the Court, that the case was brought within the principle of Homes et al. v. Dana, 12 Mass. R. 192.
The case of the Trustees of Bridgewater Academy v Gil *440 bert, 2 Pick. 579, stands upon the subscription alone, and is therefore like the case of Limerick Academy v. Davis, in most respects.
On this review of the cases which have occurred within this Commonwealth, analogous in any degree to the case before us, we do not find that it has ever been decided, that where there are proper parties to the contract, and the promisee is capable in law of carrying into effect the purpose for which the promise is made, and is in fact amenable to law for negligence or abuse of his trust, such a contract is void for want of consideration. On the contrary, in all the cases cited except the first, it is decided expressly, that promises of this nature, if inefficient at first for. want of a payee, or because at the time there was no actual consideration, but one in contemplation only, it is a legal basis for a subsequent promise, and that the execution of or beginning to execute the trust for which the fund is raised, forms a sufficient consideration for such subsequent promise.
We have then in the present case a subscription to a charitable fund made after the incorporation of the body who were its trustees, and more than a year after that a promissory note, made for value received, payable to the same party, referring expressly to the subscription and the purposes of it as the consideration of the note. And we find that those purposes are in process of execution, the funds being needed for and applied to the faithful execution of the trust.. We cannot doubt that the note is valid, and that the defence is maintainable neither in law nor in conscience. The party bound admits by his contract the consideration to be good and valuable, and he has shown nothing to authorize us to deny the justice or legality of the construction which he chose to put on his own antecedent engagement.
The court of New York, in the case of the First Religious Society in Whitestown v. Stone, 7 Johns. R. 112, sustained the same principle.[1]
*441 Another objection to the plaintiffs recovering is, that the corporation which they represent is not authorized by the terms of its charter to hold a fund for the purpose for which the money was raised by subscription; but on inspection of the act of incorporation, we think this objection cannot prevail. The purposes of the incorporation, as described in St. 1815, c. 102, § 1, are, “ to promote morality, piety and religion, and for the instruction of youth in the learned languages, and- in such arts and sciences as are usually taught in other academies.” By the second section the corporation is authorized to apply property already given, or which shall be thereafter given, &c. to the above purposes, and the only limitation is, that the income from the funds shall not exceed 5000 dollars. The education of pious indigent young men, for which the subscription was raised, is clearly within the meaning of the legislature in this statute.
In regard to the other objection, that the plaintiffs have assigned the note in question to the trustees of the college, we do not see any legal force in it. This transfer is authorized by statute, upon the condition that the funds shall be appropriated by the college to the same purposes as the academy were held to apply them to. It is converting the academy into a college, in the same place, and boimd to execute the same purposes, and probably having better means of executing them. The deed of transfer under the sanction of the legislature operates as an assignment in equity, if not at law. The note is payable to order, but that does not prevent the assignee from suing in the name of the original promisee.[1] It was advantageous for the defendant to be so sued, as he was thereby let in to all such defence, either in law or equity, as might avail him if the note had not been assigned.

 See Williams College v. Danforth, 12 Pick. 541; Trustees of the Church &c in Hanson v. Stetson, 5 Pick (2nd ed.) 509, note 1.

 See Bayley on Bills, (2nd Am. ed.) 338.