### UNIVERSITY OF VERMONT *vs.* SAMUEL BUELL.

B, with a number of other persons, signed a subscription-paper, thereby promising to pay to the *University of Vermont* fifty dollars, for the purpose of erecting such suitable college buildings as the Corporation thereof should think advisable—In an action brought against B, after the erection of the buildings, to recover the amount of his subscription, it was held that the acceptance of the subscriptions by the Corporation, and the actual commencement of the work, with a view to complete the same, so consummated the contract, that B could not avoid payment on the ground that there was no consideration for the promise.

When one, by voluntary subscription, promises to pay in labor or materials, at his option, another season, for the purpose of erecting college buildings, and who can be presumed to know that the buildings are being erected, a demand on him for the labor or materials, previous to the completion of the work, is not necessary.   A demand made after the buildings are finished is sufficient, if the payee is ready and willing to receive such pay at the college, or at any other place equally convenient for the promisor.

If the promisor, in such case, wish to discharge himself from his undertaking, he must make an offer of payment to the committee appointed to erect said buildings, or to the person or persons to whom his subscription has been assigned.

This was an action of *assumpsit* founded upon the following agreement : " Whereas the College buildings at *Burlington* have " lately been consumed by fire ; and whereas, the Corporation " have resolved to erect other buildings as soon as practicable : " *Therefore*, we whose names are hereunto subscribed, promise " the *University of Vermont* to pay them the sums affixed to our " names respectively, for the purpose of erecting such suitable " College buildings, as the said Corporation shall think advisable.

" It is understood, that this subscription is not binding, unless CHITTENDEN, " the sum of $8000,00 is subscribed in the town of *Burlington*; January, " and if any of the subscriptions are payable in collateral articles, University of " the same shall be reduced to cash value, to be estimated by a Vermont " committee for that purpose. *vs.* Buell.

" It is also further understood, that when $8000, is subscribed, " the twenty highest subscribers shall have power to appoint the " committee to examine the subscription, and estimate their cash " value, and their report shall be binding; and also, to appoint an " agent to superintend the erection of the College buildings.— " *Burlington, July 29, 1824."*

It appeared in evidence at the trial in the County Court, at March Term, 1828, that after the burning of the College buildings in *Burlington*, the defendant Buell, and the other inhabitants of that town, immediately undertook a voluntary subscription for the erection of a new edifice ; and amongst others, *Samuel Buell subscribed fifty dollars, payable in labour, or materials, at his option, another season*, subject however to the condition that the whole amount of subscriptions, in the said town, should make the sum of $8000 ; and if it fell short, the subscribers were not bound to pay.

But that amount having been raised in the town, the subscription was discharged from the condition. The subscriptions were presented to the Corporation of the *University*, and by them accepted ; and a committee was thereupon appointed to superintend the erection of said buildings. Said committee contracted with *Nichols & Herrick*, and one *Saml. Reed* to erect and complete the same ; and assigned over to them, all the sums subscribed in payment therefor ; the said *Buell's* proportion falling to said *Reed*, who had engaged to do the mason work.

In March, 1825, and before the buildings were commenced, *Buell* called on *Nichols & Herrick*, and said, that he wished to pay his subscription in Carpenter and Joiner work, and that he had hired a man for that purpose. N. & H. then informed him that *Reed*, who had engaged to do the mason work, owned his subscription, and he must pay it to him. Buell's reply was, *that he could get a mason in Champlain.*

The contractors, or superintending committee, proceeded and erected the present College buildings in the summer of 1825, to the acceptance of the Corporation. In 1826, after the edifices were completed, the said *Reed* requested said *Buell* to pay him his subscription, and told him he would take it according to the terms of the same.—It further appeared that the buildings were

G

CHITTENDEN
January,
1829.

University of
Vermont
vs.
Buell.

erected in the immediate vicinity of *Buell's* house, and that he must have seen the progress of the same, from day to day. Payment not having been made, the Corporation brought their suit to enforce it.

The defendant contended that the promise proved was without consideration—That a demand of labour or materials for the erection of the college buildings, before they were completed, was necessary—That a demand of labour or materials, after they were completed—or either before or after, for any other purpose than the said buildings, was insufficient ; and that the offer to pay said subscription in joiner and carpenter work to *Nichols & Herrick*, as the evidence tended to prove, was a sufficient tender of performance ; and requested the Court to charge the Jury accordingly.

The Court did not so charge the Jury; but did give them in charge, That if the plaintiff had proved to them nothing but the defendant's promise to pay, such naked promise would not support the action : But if they should find that the defendant signed the subscription paper, as the plaintiffs contend, and the same was delivered to the plaintiffs, and they appointed a committee to erect the buildings contemplated in the subscriptions, and they had gone on and erected the buildings on the credit of these subscriptions; this formed a binding consideration for the promise contained in the subscription—

That if the $8000 or more was subscribed, according to the result found by the said averaging committee ; that fulfilled the condition precedent named in the subscription—

That as the defendant had his option whether to pay in labour or materials the fifty dollars subscribed, which remained unpaid, and was to pay the same another season—that is, as must be understood, the next season for building, next following that in which the subscription was made.

If the defendant also was living during the season of payment in sight of the work, and erection of the buildings, no demand on him was necessary. He ought himself to have performed such labour, or furnished such materials as were needed for the building, and offered the same—That the demand made by *Reed*, if made as testified, when *Loomis* was building his house, the year after the college buildings were erected, was a sufficient demand, if said *Reed*, was ready and willing to receive such pay at the college, or any other place equally convenient for the defendant—

That if the defendant wished to make known his option, about the mode of payment, before the work was begun, he might have

gone to the contracting committee, or to the builders, and ascertained which of them had the controul of his subscription, and tendered payment to the person or persons having such controul —That if said *Buell* had employed a carpenter to work, as he informed *Herrick*, and, on being informed that *Reed*, who held the subscription, had the care of the mason work, said he would then employ a mason at *Champlain*; that was a waiver of any claim to have his carpenter and joiner employed.

CHITTENDEN,
January,
1829.

University of
Vermont
vs.
Buell.

The Jury returned a verdict for the plaintiffs. The defendant filed exceptions to the opinions and charge of the Court ; and the cause now came before this Court on a motion for a new trial founded on said exceptions.

*Thompson for the defendant.*—1. The defendant contends that the evidence shows no consideration for the promise. The fact that the plaintiffs may have proceeded in the erection of the College buildings upon the credit of the subscription (and the fact is denied) does not vary the case from ordinary cases of a *naked promise.* There is no difference between this case and the case of establishing a professorship, hiring a professor, extending the sphere of operations, &c.

2. A demand was necessary. The expression " another season" is wholly uncertain in its meaning, because every part of the year is a " season" for building. The expression, therefore, does not imply a promise to pay within a limited and defined period. But should the promise be so construed, the very nature of it implies the reasonableness and necessity of notice or demand. From the very nature of the transaction, all persons concerned must have understood that notice was to be given.

3. If a demand was thus necessary, it is contended that none is proved. The only demand or notice was by *Reed* to labour on *Loomis'* house. Now, a demand, which would not have been good had not the claim been transferred, would not be good for the plaintiffs' assignee. Can it be contended that a demand by the plaintiffs to labour on *Loomis'* house would be sufficient ?

4. But it is contended that a sufficient tender of performance was proved. An offer to pay in carpenter's and joiner's work was enough. It is no excuse for not receiving the labour offered, that such an arrangement had been made among the assignees, as rendered it inconvenient for the person to whom it was tendered, to receive it. *Buell* could not be subjected to any inconvenience by any arrangement made by the plaintiffs or their assignees. Having employed his labourer, and tendered his labour to one as-

CHITTENDEN,
January,
1829.

University of
Vermont
vs.
Buell.

signee, he could not be turned over to another, and compelled to furnish labour of another kind. The defendant did not waive his claim to have the labour tendered received, unless what he said amounted to a promise, and induced *Herrick* not to accept the labour offered.

*Bailey and Marsh for the plaintiffs.*—1. Was a *demand* necessary to entitle the plaintiffs to recover? If so, was the demand proved sufficient? By the terms of the subscription, the "labour and materials" were to be paid in or during the "next season." The object of the subscription was to rebuild the college edifices in this town—it was made in the same year in which the old buildings were consumed by fire—and it was manifestly improbable, if not impossible, that the same should be replaced before the next year or season. In the following season, by which the *summer* season is meant, the new college buildings were erected, in sight and hearing of the defendant. Having agreed to furnish *labour* and *materials* for a specific purpose, and having fixed the time in which he would do this, with reference to the time, a season when the corporation would probably want those articles, and could profitably use them, it was his duty to fulfil this promise within the time prescribed by himself: he should have tendered to the agent of the corporation, or at the site of the college buildings, the labour or the materials; no demand therefore was necessary. But if it was, the evidence proved a legal and sufficient demand. The subscription in question had been assigned by the building committee, appointed by the corporation and the inhabitants of Burlington, to *Samuel Reed,* who had contracted jointly with *Nichols* and *Herrick* to put up the college edifices. The defendant, having neglected to offer his subscription during the next season, (1825) *Reed,* at *Loomis'* house in 1826, after the college buildings were completed, called upon *Buell* for his subscription according to its purport. *Buell* replied that he was to pay in *labour* or *materials,* to which *Reed* rejoined, that he then wanted labour, &c.—This was a sufficient notice and demand to, and of, the defendant. It is idle to say, that having stood by while the college buildings were going up, within the sound of the trowel and hammer, and yet not offering his *work* or *materials,* he was *by his own neglect,* released from all obligations to pay his subscription.

2. There was no offer or tender; the evidence only shows that *Buell* told *Nichols & Herrick* that he had engaged a man to do joiner's and carpenter's work on his subscription—and that he

might have talked with some person on that subject: but did he <span style="float:right">CHITTENDEN, January, 1829.</span> ever *go with, or send a hand to, Nichols & Herrick,* or to *Reed,* or any other agent of the plaintiffs, to perform the labor? There was no evidence even *tending* to show this fact: merely *saying* that he had *engaged a man,* or the *fact* that he had done so, was no tender. But the defendant was informed in so many words by *Nichols & Herrick,* that *Reed* was to do the *mason work* about the buildings, and that this subscription was assigned to him, to whom it must be paid—and *Buell* replied that he could get a mason at *Champlain.* This testimony came from the defendant's own witness. Here he waived his tender, if he had made one. But the pretence of a tender, which can bar this action, is not supported by a single fact in the whole evidence.—*Barney* vs. *Bliss et al.* 1. *Chip. Rep.* 399.—*Bardenane* vs. *Gregory,* 5. *East* 107.

*University of Vermont. vs. Buell.*

3. There was a sufficient legal consideration to support the promise on which the action was founded. We need not enquire whether the defendant would or did derive such an advantage from the object to which he offered to contribute, in the enhanced value of his real estate, and the convenience and benefit of having a literary institution in his immediate neighborhood, as to sustain his undertaking or promise in law. The case may be put, at once, upon the ground of an *executory contract.* *Buell* says to the corporation—" If you will go forward and erect suitable college " buildings on the site of the old college, in a reasonable time, I " will contribute or pay fifty dollars in labour or materials in the " course of the next season, towards that object." The plaintiffs assent to his proposition—commence the work—incur expense —hire help, and buy materials—pay out money—all on the strength and faith of the defendant's (among others) promise. *Buell* cannot shield himself against this claim by saying that there was no *consideration* for his undertaking. This obligation is complete both in a moral and legal point of view. No sound rule of law will exempt him.—*Holmes et al.* vs. *Dana,* 12 *Mass.* 190.— *Trustees of Farmington Academy* vs. *Allen,* 14 *Mass.* 172.

The opinion of the Court was pronounced by PADDOCK, J. The defendant contends,

1. That there was no consideration for the promise : but if adjudged otherwise, then,

2. That a special demand on *Buell* was necessary.

3. That a sufficient tender of performance was made by *Buell* in March, 1825 ; and

4. That he was not bound in 1826, after the buildings were completed, to make payment.

CHITTENDEN,
January,
1829.

University of
Vermont
vs.
Buell.

It is undoubtedly true, that every man is by the laws of nature bound to fulfil his contracts ; and equally true that neither the laws of this State, nor the Common law, will compel the performance of an agreement, entered into without sufficient *consideration, motive,* or *inducement.*

This consideration may arise, either by reason of a benefit resulting to the party promising, or to a third person, at the request of the former, by the act of the promisee ; or by the latter sustaining loss or inconvenience, or suspending or forbearing any right or remedy in law or equity, at the instance of the person making the promise.

It is not necessary that the consideration and the thing promised should be equal in point of value ; for, so variable are the fashions of the times, or caprice of contracting parties, that the law can affix no rule by which the relative value of things can be determined.

It is essential to the validity of every contract made by persons competent to contract, that the assent or consent be mutual, and under such circumstances as to suppose a free, fair and serious exercise of the reasoning faculties ; and it matters not whether the assent or promise be express, or implied : for, notwithstanding the opinion of *Ch. Just. Holt, in Starke* vs. *Cheesman, Ld. Raym.* 538, to the contrary, such is now the settled law. But in the present case, it is not questioned but that there was a promise made by *Buell*, directly to the Corporation of the *University of Vermont ;* but it is contended, that the case shows no consideration for that promise.

What secret motive *Buell* might have had, how far his interest was concerned, or his pride of residency was connected with the rebuilding of the edifice, and operation of the Seminary, are considerations not within the scope of research ; nor are they questions necessary here to be determined. It is sufficient in this case, that the corporation did accept the proffered assistance of the subscribers ; and upon the faith of their promise, proceeded in the erection of the buildings and the expending of their own funds to accomplish the same. Although the promise would not have been mutual if the Corporation had sued before they had made any advances towards the erection of the buildings ; yet, it cannot be said, after the acceptance of the subscription, the appointment of a committee to superintend the structure, and a commencement in fact of the work, that the promise was not mutual, for with the commencement of such labours, in good faith, with a view to the ultimate completion of the superstructure, was a consummation of

CHITTENDEN,
January,
1829.

University of
Vermont
vs.
Buell.

the consideration, and bound the defendant Buell to a perform-ance on his part.

And this is a stronger case than *Pillans* vs. *Mierop*, 3 *Burr*, 1673, where *Justice Yates* declared the promise binding of and in itself, without a consideration ; giving as a rule of law "that *damage* to another, or *suspension or forbearance of his right*, is a foundation for an undertaking, and will make it binding, though no *actual benefit* accrues to the party undertaking. And this rule is recognised by *Ld. Ellenborough*, in *Jones* vs. *Ashburnham*, 4 *East*, 463 ; and in *Bunn* vs. *Grey*, 194*th of the same vol.* his Lord-ship says, "that, a consideration of loss or inconvenience sustained by one party, at the request of another, is as good a consideration for the promise by such other, as a consideration of profit or convenience to himself." The same principle is maintained by a full Court in *Williamson* vs. *Clements*, 1. *Taunt*. 523.

This principle, however, has been too long established, and too clearly understood to be strengthened by multiplying adjudged cases.

The case of the *Trustees of Phillips Limerick Academy* vs. *Davis*, 11 *Mass*. 113, is much like the one at bar, with this differ-ence. The action was brought in the name of the Trustees, and the subscription paper was silent as to whom payment was to be made, there being no *payees* named in it ; and in point of fact, the paper was drawn up and subscribed to, anterior to the application for and granting of the Charter ; so that in effect, there was no *donee* ; therefore, nothing could pass by the grant. *Shep. Touch-stone* 229.

The defence was made upon the grounds, that there was not only the want of a plaintiff in the case, competent to exact the payment, but the evidence did not go to prove a promise or con-tract which the law would enforce.

*Ch. Just. Sewell*, in delivering the opinion of the Court, with more severity than can perhaps be justified, said, " This defence may be justly stigmatized as base and dishonorable ; it may be considered as unjust when offered under circumstances like these now in evidence." But the Court were compelled to decide " that the writing given in evidence, contained no proof of a contract ; there being no parties, there could be no mutuality—no valuable consideration."

The case of *E. Larkin* vs. *S. Dana*, 12. *Mass*. 190, bears a stronger analogy to the present ; the subscribers in that case, agreed to lend *Everett & Monroe* the sums of money set against their names respectively, for the purpose of establishing a news-

CHITTENDEN
January,
1829.

University of
Vermont
vs.
Buell.

paper, and appointed *Larkin* to receive and manage the application of the same. *Larkin* advanced his own money, and then brought his action to recover the amount *Dana* subscribed. The Court considered, " that by means of the contract, *Larkin* was led to confide in the engagement of the defendant so far, as to advance money for him, and should recover it back.

The *Farmington Academy* vs. *Allen*, 14 *Mass.* 172, may be considered a case decisive of the point in question. The subscribers obligated themselves to pay to such persons as the Legislature should thereafter appoint trustees of said Academy. The question was submitted to the Court upon the following statement of facts : " The defendant signed the paper and subscribed *fifty* dollars. After the act of incorporation was passed, the trustees appointed a committee to erect a building for their use ; who afterwards applied to *Allen* and the other subscribers for payment of a portion of their subscriptions. Allen had no money, but delivered some shingles which were used upon the building."

It will be seen that the promise in this case, like that in *Limerick Academy* vs. *Davis*, was not made to any person or corporation that had an existence at the time of making the same. To obviate that objection the plaintiffs were allowed to add the common counts *for money had and received*, and *money laid out and expended* ; and on those counts, the Court considered the plaintiffs ought to recover, because " being an inhabitant of the town, he must have known the work was going on ; and then, he furnished some materials, and this was sufficient to justify the trustees in proceeding to incur expense on the faith of the defendant's subscription ; recognizing them as the payees of the same."

But the case at bar is relieved from the objection, of there being no promisee at the time the promise was made ; and does compare with the one last cited in two important features, that is, the buildings were erected under the eye of the defendant *Buell* :—further, in March, 1825, *Buell* went to the contractors, and informed them, that he had hired a carpenter and joiner to work out his subscription. Upon being told that a mason was wanted, he said " he could get one in *Champlain*." This I think as full a recognition of his promise, accompanied with the knowledge that the expense of building was going on, as the payment of part under like circumstances was in the case last cited.

It is further contended by the defendant that as the promise was to pay " another season," the time of payment was so indefinite, as to make a special demand necessary.

The end of the law is, to do justice between the parties ; therefore, such construction must be put upon contracts, as are *reason-*

CHITTENDEN
*January*,
1829.

University of
Vermont
*vs.*
Buell.

*able*, and as near the minds and apparent interests and intent of the parties, as the rules of law will permit ; special reference being had to the subject-matter of the agreement. Now, in applying this rule, we are to connsider the destruction of the college buildings, as being a private as well as public loss ; the operations of the Seminary were to be suspended until another building should be erected, or some inconvenient place substituted—the building was to be raised with brick—the dimensions large, and the Spring, Summer, and Autumn months yielding a scanty time in which so great an undertaking could be accomplished. These considerations thrown together, leave but little doubt what was understood between the parties by "another season." They must have understood, *the disappearing of the next winter*, and the opening of Spring, when the work could profitably be commenced. And so *Buell* understood it, by his applying in March, 1825, and giving information " that he should pay in labour." And we are satisfied with the charge of the Court below upon this point, as also that of the demand ; for according to *Holmes* vs. *Twist, Hob.* 51, *cited in Selwin N. P.* 92, an averment of notice is not necessary where the connusance of the act to be done lies as well in the notice of the defendant, as the plaintiff.

It is further insisted, that the defendant *Buell* did make a sufficient tender of performance in March, 1825. It will be noticed, that the offer was not made to the contracting committee, nor to *Reed*, to whom the demand was sett off ; but to *Nichols & Herrick*, who had no authority to receive the payment, and who had not made themselves parties or privies to the contract.

Furnishing labour or materials according to the contract, and notice to the superintending committee, would have been a good tender. Notice to *Reed* might have been ; but notice to *Nichols & Herrick* cannot be so considered ; and if notice to *N. & H.* could be thought sufficient, it is very doubtful whether it ought not to be considered as waived by *Buell's* saying " he could get a mason in *Champlain*."

The fourth and last point made in argument by defendant, needs no notice, as the council could not have been serious in noting it as a point to be insisted on.

The Court are satisfied with the instructions given to the jury by the County Court ; and are also satisfied that the defendant is liable to the present plaintiffs upon his original undertaking, and that he hath not discharged himself therefrom ; therefore the judgment of the County Court is affirmed.

Judgment affirmed.

*Bailey* and *Marsh*, for plaintiffs.
*Thomposn*, for defendant.