Dewey, J.
It may be found somewhat difficult to reconcile all the views which have been taken, in the various cases that have arisen upon the validity of promises, where the ground of defence has been that they were gratuitous and without consideration. The decisions, in some of the earlier cases, were strongly against the validity of such promises, while they constituted mere promises of future contribution, and nothing had been done, by way of expenditure, upon the faith of them. The case of Limerick Academy v. Davis, 11 Mass. 113, often cited upon this point, and a leading case, arose upon a naked promise of contribution to an academy proposed to be established. It contained no provision for the payment of money to any individual named in the subscription paper, or to be selected by the subscribers at a meeting to be held by them for that purpose. In an action brought upon this subscription by the academy, when subsequently such an academy was incorporated, it was held that the plaintiffs could not recover, inasmuch as there were no legal parties to the contract, and no valuable consideration for the promise. The case of Farmington Academy v. Allen, 14 Mass. 172, while it affirmed the doctrine of the former case, held the defendant liable, upon the ground of acts of ratification by him, and the expenditure of money by the plaintiffs in furtherance of the object of the subscription. The case of Boutell v. Cowdin, 9 Mass. 254, was a decision against the validity of a voluntary subscription, as a contract capable of being enforced in a court of law. This case, however, has been the subject of subsequent commentaries by the court, and perhaps may be considered somewhat explained, and the principles tnerein stated to be somewhat modified. Amherst Academy v Cowls, 6 Pick. 434. The case of Bridgewater Academy v. Gil *316 bert, 2 Pick. 579, is undoubtedly a very strong case, indicating the extent to which this principle of holding voluntary subscriptions invalid in law has been carried. Here was a subsisting corporate body, capable of acting as a party, and therefore obviating what has frequently been an insuperable objection in other cases, viz. the want of parties. The subscription was in aid of rebuilding an edifice that had been destroyed by fire, and was to be paid in lumber. The plaintiffs had contracted for materials for the rebuilding, before the defendant gave notice of his intention not to pay his subscription because the trustees of the academy were about to erect their building on a different site, and more remote from the dwelling-house of the defendant. The decision was against the recovery of the subscription. The grounds of this decision are briefly assigned, and seem to be, that a promise of that character was not in itself binding, and that the defendant had not, as in the case of Farmington Academy v. Allen, ratified it, or permitted expenditures to be made upon the credit of it. How far the fact of change of location of the edifice would have warranted the refusal to pay, is not particularly stated in the opinion; although, as it seems to me, it might have been a material circumstance in the case. To some extent, the objections, formerly taken and sustained, to the enforcing of payment of a voluntary subscription or promise in aid of a charity, have been held less available in the later cases. Thus in the case of the Trustees in Hanson v. Stetson, 5 Pick. 506, a voluntary contribution to a ministerial fund, in the form of a promissory note given to a competent payee, was held valid and binding. The court say, “ it is a sufficient consideration that others were led to subscribe, by the very subscription of the defendant.” Importance is also attached to the fact, that in consequence of these subscriptions thus made, the great purpose in view, the settlement of a minister, had been effected. In the case of Amherst Academy v Cowls, 6 Pick. 427, upon a full argument, and after a review of the previous cases, an action was sustained upon a promissory note given in aid of a charitable fund for education.
In looking at the facts stated in the case before us, it will *317 be seen that the articles of agreement, signed by the defendant and his associates, extend beyond a mere promise to pay a certain sum of money towards the expenses of erecting a building for an academy, and leaving the object to be effected by a corporation yet to be created. Had such been the state of the case, the position taken by the defendant, that this contract could not be enforced, might have been insuperable. But we find, in the articles of association, provision made as to the persons who are to be the payees; and the several subscribers stipulate to make payment, for the number of shares subscribed by each, to such persons as should be appointed to receive the same, by a majority of the shareholders. We find further, that the articles of association contemplate action and control by the subscribers, in all matters arising upon the questions of location, and erection of the building, and also a direct pecuniary interest; it being provided that “ each subscriber shall be interested therein, in proportion to the amount by him subscribed, in shares of ten dollars each.” These features of the case have an important bearing upon the question of the validity of the contract, and the right to enforce it in a court of law. We find also that the defendant, to some extent, ratified and confirmed his original act of subscription as a shareholder. He attended at three different meetings of the holders of shares in the association, and, under the rights acquired as a subscriber to the shares, acted and voted as a member of the association. At the first meeting, he voted with the majority upon the preliminary question, fixing certain limits within which the location was to be made. The plaintiffs were chosen a building committee, at the same meeting, and were directed to report, at an adjourned meeting, plans for said building; and pursuant to this vote, they performed said service. At the subsequent meeting, the defendant, although dissatisfied with the vote locating the academy building on the land of Messrs. Hopkins and Rosseter, and although he declared that if this location was persisted in, he would not pay his subscription, did not declare any intention to withdraw himself from the association, but on the contrary, continued to act as one of the members, attended the third meeting of the *318 associated subscribers, and exercised the right of membership. If the notice given by the defendant at the second meeting might have been deemed a revocation of his subscription, had he then withdrawn from all further participation in the objects of it, yet he seems virtually to have waived or abandoned the renunciation thus made, by continuing to meet with the associates, and acting as one connected with them, at their third meeting.
The plaintiffs were duly appointed and authorized to collect from the several subscribers the amount of their subscriptions. In the mean time, an act of incorporation for an academy had been obtained, on the petition of the defendant and others, but no organization had taken place. The plaintiffs, in this state of things, proceeded to contract for land, and took measures to procure the erection of a suitable building for the academy, and subsequently a notice in writing was given to the plaintiffs that the defendant did not consider himself bound, and was not disposed, to pay his subscription, if the location selected was to be adhered to.
It seems to us that all these facts, taken together, present a case avoiding the objection of want of parties or want of legal consideration for the promise of the defendant. The case of Thompson v. Page, 1 Met. 565, strongly sustains this view of the question which arises upon the case before us. The facts are so far similar as to render it somewhat analogous on both these points. That was a subscription, by an association of individuals, to aid in the erection of a meeting-house ; the payment of the sums subscribed was to be made to a treasurer to be selected by a majority of the associates, at a meeting to be held for that purpose, and the subscribers were to be interested in the stock, as in the present case: And it was held, in an action, brought by a person thus chosen treasurer, to enforce the payment of a subscription, that it was rightfully brought in the name of such person, and that there was a sufficient consideration for the promise, to render it valid and binding in law. George v. Harris, 4 N. Hamp. 533, is also a strong case favorable to the sustaining of the present action.
*319 These principles and decisions seem fully to sustain the present action; and we think we are only applying what has latterly been considered the rule of law in analogous cases, in adopting, as the result of our consideration of the questions he:e raised, the conclusion that the promise was valid in law, and that the objections taken to it cannot prevail.
This view of the case disposes of the principal question, and the only one of any difficulty. The objections further suggested, as arising from the proceedings of the committee in relation to the nature of the title acquired to the land purchased by them, can constitute no defence to the action, or exonerate the de fendant from his liability to pay his subscription.

Exceptions overruled.