LADIES' COLLEGIATE INSTITUTE *vs.* WILLIAM A. FRENCH.

SAME *vs.* JOEL SNOW.

SAME *vs.* GEORGE W. BANKER.

SAME *vs.* JOSEPH HOCKEY.

The implied promise of the promisee to hold and appropriate the funds subscribed, in conformity with the terms and objects of the subscription, is a sufficient legal consideration for the promise of a subscriber to a fund for the endowment of a corporation created for charitable purposes.

The corporators named in a charter from the legislature, establishing a charitable corporation at Amherst, elected twelve associates, and organized themselves as a corporation. A year afterwards the charter was amended by the legislature so as to permit the location of the corporation either at Amherst or such other place as the corporation should select; and a meeting of the original corporators was called, at which they elected twelve associates, retaining some and leaving out others of those elected before, reorganized the corporation, and located it at Worcester, where its business was afterwards carried on. *Held,* that the power of the corporators to organize was not exhausted by their first organization, but that for real or supposed errors therein they might reorganize; that if the associates originally elected acquiesced, the reorganization was valid; that the corporation as reorganized might maintain actions on agreements to subscribe certain sums for its endowment, payable to the treasurer of the corporation, describing the institution as " to be located at Amherst, as provided by the charter, or in some other suitable place, subject to the action of its legal trustees, with the consent of the general court," whether signed before or after the second organization and the location at Worcester; and that a condition of such agreements, that no subscription should be binding unless the sum of twenty thousand dollars should be subscribed before a certain date, was complied with by subscriptions to that amount, either in the same form, or " towards its two hundred thousand dollars endowment, provided it is to be located at Worcester," although the sum last named had not been obtained.

ACTIONS OF CONTRACT to recover sums of money severally subscribed by the defendants. At the trial in the superior court, the cases appeared to be in substance as follows:

By *St.* 1854, *c.* 342, which took effect on the 21st of April 1854, three persons named, with their associates and successors, were incorporated "by the name of the Ladies' Collegiate Institute, to be established in the town of Amherst, for educational purposes," with all the powers and liabilities set forth in the Rev. Sts. *c.* 44. On the 6th of June 1854 the three persons named in the charter, together with twelve others whom they elected as their associates, held a meeting and organized the corporation by the choice of officers, and these persons con-

tinued for about a year thereafter to act as an organized corporation under the name of the Ladies' Collegiate Institute.

By *St.* 1855, *c.* 174, which took effect on the 14th of April 1855, the *St.* of 1854, *c.* 342, "is so amended that the said Ladies' Collegiate Institute may be located in the town of Amherst in the county of Hampshire, or in such other town or city in this commonwealth as may be selected by said corporation." In July 1855 a call was published for a meeting of the three corporators named in the act, alleging that the organization of 1854 had been informal; and a meeting was held on the 24th of July 1855, at which the corporation was organized according to the provisions of the Revised Statutes, and the three corporators elected twelve associates, retaining some and leaving out others of those elected at the first organization. These actions were brought by direction of the officers chosen since the second organization.

In September 1855 the plaintiffs bought land and buildings in Worcester, for which they paid $46,000, and before September 1856 they expended $10,000 in fitting up and furnishing the buildings, and in 1857 they built additions at a cost of $20,000. The subscriptions were the only means which the plaintiffs had for defraying these expenses. The school was opened on the 3d of September 1856, and has ever since continued to be maintained, and preference in admission given to daughters of subscribers.

Before the 1st of August 1855 there had been obtained subscriptions to the amount of $15,000 to the first, and of the further amount of $18,000 to the second, of the following papers :

" We whose names are subjoined, desirous of making more ample provision for female education, agree to pay the amount attached to our names to the treasurer of the Ladies' Collegiate Institute, an institution incorporated by the last legislature of this commonwealth, to be located in Amherst, Mass., as provided by the charter, or in some other suitable place, subject to the action of its legal trustees, with the consent of the general court. The conditions of this agreement are such that no sub-

scriber shall be holden to pay the amount of his subscription, unless the sum of twenty thousand dollars shall be subscribed for the endowment by the first day of August 1855. But subscriptions may be collected as soon as twenty thousand dollars have been subscribed. Boston, December 6th 1854."

" We whose names are subjoined agree to pay the sum attached to our names to the treasurer of the Ladies' Collegiate Institute towards its two hundred thousand dollars endowment by the 1st of August 1855, provided said college is to be located in the city of Worcester. Worcester, March 5th 1855."

The defendant French, in February or March 1856, subscribed $ 40 to the first of these papers, and received at the same time a memorandum from the treasurer that he was to pay this amount in four equal annual instalments, the first of which should be paid on the 1st of August 1856; and in October, being asked to pay that instalment, signed this note : " In consideration of the location of the Ladies' Collegiate Institute in the city of Worcester, I promise to pay ten dollars to the treasurer of said institution or his order on October 13th 1856, and interest after due. Cambridge, October 4th 1856."

The defendant Snow subscribed to the first paper $ 16 before the 24th of July 1855, $ 50 in the summer of 1856, and $ 42 in the fall of 1856; received at the times of his second and third subscriptions memoranda like that given to French ; and paid two of the annual instalments on his first, and one on his second subscription.

The defendant Banker, before the 24th of July 1855, subscribed to the same paper $ 40, and paid $ 10 thereof, and $ 10 more in August 1856 ; and in September 1856, brought a relative to Worcester, who entered the school, and the officers of the institution then made a full statement to him of their plans and affairs.

The defendant Hockey, in the winter of 1856 – 7, subscribed $ 50 to a paper dated October 1856, by the terms of which the subscribers " in consideration of the establishment in the city of Worcester of the Ladies' Collegiate Institute " agreed to pay to its treasurer the amounts subscribed by the 1st of March

1857; received a writing, allowing him to pay his subscription in four semiannual instalments of $ 12.50, the first to be paid in March 1857; and then paid the first instalment.

Each of the defendants refused on demand to pay the remainder of his subscription.

The defendants offered no evidence, but contended that upon these facts the plaintiffs had not made out a case which would warrant a verdict against either of them. *Allen*, C. J. overruled the objections, verdicts were rendered for the plaintiffs, and the cases reported to this court.

*G. F. Hoar & A. A. Ranney*, for the defendants. The right of the corporators named in the charter to organize the corporation was exhausted by the first organization, and the second was unauthorized and of no effect. By the original act and the proceedings under it the corporation was organized and established at Amherst, and could not be removed without a vote of the corporation. All the acts done at Worcester and the expenditures there were therefore unauthorized. The defendants contracted with a corporation at Amherst, and the corporation at Worcester is not a party to the contract.

The contract of subscription is void for want of mutuality and of consideration. *Phillips Limerick Academy* v. *Davis*, 11 Mass. 113. *Farmington Academy* v. *Allen*, 14 Mass. 172. *Boutell* v. *Cowdin*, 9 Mass. 254. *Bridgewater Academy* v. *Gilbert*, 2 Pick. 579. *Hamilton College* v. *Stewart*, 2 Denio, 403, and 1 Comst. 581. *Ives* v. *Sterling*, 6 Met. 310. *Foxcroft Academy* v. *Favor*, 4 Greenl. 382. 1 Parsons on Con. 378.

The condition of the promises of French, Snow and Banker was not performed, because $ 20,000 was not subscribed before the 1st of August 1855. The subscriptions for $18,000 should not be included in the reckoning; because they were upon a different condition, preventing the free action of the trustees in regard to the location, and requiring the institution to be absolutely located at Worcester; and because they were upon the further condition that the whole $ 20,000 should be subscribed before any part should be valid.

A subscription, like the original one of French, to an institu-

tion "to be located" in the future, made after it has in fact been located, cannot be carried out so as to give each party his rights, and has no validity as a contract. *People's Ferry* v. *Balch*, 8 Gray, 303.

Part of Snow's subscription, and all of Banker's, stand upon still stronger grounds, because made before the organization at Worcester.

French's note was but a renewal in part of a void instrument, and therefore had no validity, or was, at most, valid for that part only. The location of the institute at Worcester, if legal, was no consideration for this note, or for Hockey's subscription, because it was a past or executed consideration. Chit. Con. (8th Amer. ed.) 61 & note. *Dearborn* v. *Bowman*, 3 Met. 155.

*F. H. Dewey*, for the plaintiffs.

CHAPMAN, J. The signatures of the defendants to the subscription papers declared on being admitted, the defendants object that those who prosecute this action have no right to do so under the *St.* of 1854, *c.* 342, by which the institute was chartered, and the *St.* of 1855, *c.* 174, by which the corporators were authorized to locate it at such place as they should select. The objection rests upon the fact that on the 6th of June 1854 the three corporators named in the first act met, together with twelve other persons whom they elected as their associates, and organized the corporation by the choice of officers; and that they afterwards proceeded to act as an organized corporation for about a year. It is contended that the power of the corporators to organize under the charter was thereby exhausted; and therefore there could be no new organization that would be valid.

It appears that in July 1855 the corporators called a meeting in a formal manner, alleging that their proceedings had thus far been informal. This meeting was held on the 24th of July, and they then organized conformably to the provisions of the Revised Statutes, and elected twelve associates, some of whom were the same that had been previously elected, and others were not. They have ever since acted under this organization, without any objection on the part of the members who were not re-elected as associates, so far as appears; they have held

and managed the property of the corporation, and this action is brought by their authority.

The book containing the minutes or record of the first organization and the proceedings under it exhibits great irregularities and lack of skill in conducting such matters. But whether the defects were such as to render the proceedings void, it is not necessary to determine; for we are of opinion that if the corporators and their associates, fearing that there might be some question respecting the validity or regularity of their acts, chose to reorganize, they might legally do so, and thus correct their real or supposed errors. And if some of the original associates were omitted in the new organization, and others were elected in their stead, the identity of the corporation would not thereby be changed, nor would other persons have a right to complain, if the original associates acquiesced, as they seem to have done. The franchise is not a mere naked power, as the defendants contend; it is rather a property, to be held and managed for the purposes indicated in the charter during the term for which it is granted, unless it is forfeited and taken away at an earlier period.

The second objection is that the promises of the defendants, being mere subscriptions to the funds of the institute, are without consideration, and therefore void. Subscriptions of this character have been made the subject of litigation in many instances; and the earlier cases in our reports contain *dicta* some of which have not been sanctioned by later decisions. But in the cases of *Amherst Academy* v. *Cowls*, 6 Pick. 427, *Williams College* v. *Danforth*, 12 Pick. 541, and *Thompson* v. *Page*, 1 Met. 565, their validity is established, and the ground of it is definitely stated. It is held that by accepting such a subscription the promisee agrees on his part with the subscribers, that he will hold and appropriate the funds subscribed in conformity with the terms and objects of the subscription, and thus mutual and independent promises are made, which constitute a legal and sufficient consideration for each other. They are thus held to rest upon a well settled principle in respect to concurrent promises.

In the present cases, the defendants' promises were accepted by the plaintiffs before there was any attempt to revoke them, and the plaintiffs have established the school and maintained it to the present time. Failure of a consideration originally good is not pretended, and there exists ample power to regulate and enforce the trust assumed by the plaintiffs for the future. The location at Worcester was legal under the amended charter, and none of the defendants show any just cause on their part to complain of the expediency or propriety of this location.

*Judgments on the verdicts for the plaintiffs.*