**In re MORTON SHOE COMPANY, INC. Debtor.**

**Bankruptcy No. 82–0007–HL.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 3, 1984.

Charles L. Glerum, and Frank A. Libby, Jr., Choate, Hall & Stewart, Boston, Mass., for petitioner.

Leonard Kaplan, and Ethan E. Jacks, Nutter, McClennen & Fish, Boston, Mass., for respondent.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Debtor's Objection to the Claim of Combined Jewish Philanthropies of Greater Boston ("CJP") came before the Court[1] for hearing on March 21, 1984. The parties agreed to the relevant facts and submitted the case to me on oral argument and Memoranda of Law. Based upon the agreed-upon facts and a review of the Memoranda and applicable law, I find and rule as follows.

In 1979 and in 1980 Morton Shoe Company Inc. ("the debtor" or "Morton Shoe") pledged $10,000 per year to CJP during a campaign drive. In 1976, 1977 and 1978 Morton Shoe had made contributions in the same amount, all of which were paid. The 1979 and 1980 pledges totalling $20,000 remain unpaid. CJP has filed a proof of claim for $20,000 to which the debtor timely objected.

CJP solicits pledges by sending campaign workers to address potential corporate contributors at meetings convened for such a purpose. The solicitor describes the purpose and needs of the charity. A pledge card is executed by the subscriber. The card states that the subscription is in consideration of the pledges of others. After the pledge drive, CJP establishes an operating budget, determines the amount of and recipients of distributions, and hires personnel. In addition, based on the estimated amount of subscriptions, CJP borrows money from banks so that it can make immediate distributions to recipients before obtaining the actual pledge amount. The debtor objects to the claim of CJP, asserting that it is unenforceable for lack of consideration.

Traditional legal principles require that consideration support a promise. *Corbin, 1 Corbin on Contracts*, Section 109 (2d ed. 1963); *Jaeger, 1 Williston on Contracts*, Section 99 (3d ed. 1977). Consideration is defined as "... a benefit to the maker of the promise, or a loss, trouble or inconvenience to, or a charge or obligation resting upon the party to whom the promise is made." *Cottage Street Methodist Episcopal Church v. Kendall*, 121 Mass. 528, 529–30 (1877).

The debtor objects to this claim asserting that the charitable pledge is unenforceable as it was a promise unsupported by consideration.

The allowability of claims is to be determined under state law. *See L. King, 3 Collier on Bankruptcy*, Par. 502.02, at 502.24 (15th ed. Supp.1983). Early Massachusetts decisions had ruled that "gratuitous or benevolent proposals prompted by charitable or religious motives ... will not require a performance." *See, e.g., Cottage Street Methodist Church v. Kendall*, 121 Mass. 528 (1877); *Limerick Academy v. Davis*, 11 Mass. 113 (1814). The trend of judicial decisions during the last century, however, has been toward enforcement of charitable pledges as a means of encourag-

---

**1.** This matter was originally assigned to Judge Lavien. He recused himself from hearing this dispute because he is a member of Combined Jewish Philanthropies.

ing philanthropy and of promoting religious, educational and social enterprises. *See 73 AmJur2d, Subscriptions,* Section 2, at 694–95 (Supp.1983). Courts, including those of Massachusetts, have striven to find grounds for enforcing charitable subscriptions, not without engaging in difficult legal reasoning. *See J. Calamari and J. Perrillo, Contracts,* Section 6–5, at 208–09 (1978).

A review of the Massachusetts case law reveals two rationales the courts have employed to justify enforcement of charitable subscriptions. A series of decisions has found legal consideration in the traditional sense in the charity's agreement to appropriate funds in accordance with the terms of the subscription. *E.g., Ladies Collegiate Institute v. French,* 82 Mass. 196 (1860), *Ives v. Sterling,* 47 Mass. 310 (1843). In the *French* decision, the court enforced a charitable pledge to establish a college, stating:

> "It is held that by accepting such a subscription the promisee agrees on his part with the subscribers, that he will hold and appropriate the funds subscribed in conformity with the terms and the objects of the subscription, and thus mutual and independent promises are made, which constitute a legal and sufficient consideration for each other." *Id.* at 201.

Similarly, in *Robinson v. Nutt,* 185 Mass. 345, 70 N.E. 198 (1908), the court enforced a promise to make a monthly contribution to a parish, which subscription was conditioned on the parish's raising the full amount by similar contributions. The court enforced the promise against the donor's estate, holding:

> Testatrix's subscription was really made in the form of a formal offer which, being accepted by the plaintiffs, became an agreement under which they entered upon the performance of the contemplated plan, by obtaining additional subscriptions from others, and as a result the combined pledges made up the full amount required. When applied the money received from time to time in reduction of the debt of the parish, the object upon which her promise depended had been accomplished.

*Id.* at 348, 70 N.E. 198. *Accord, Estate of Wardwell v. Commissioner,* 301 F.2d 632 (8th Cir.1962).

A second rationale adopted by Massachusetts case law for enforcing charitable subscriptions does not attempt to discover consideration, but rather, enforces the pledge because of the charity's reliance on the promise, such as its expenditure of money, labor, and time in furtherance of obtaining the subscription. *E.g., Trustees of Amherst Academy v. Cowls,* 23 Mass. 427 (1828); *Farmington Academy v. Allen,* 14 Mass. 171 (1817). *Accord, I & I Holding Corp. v. Gainsburg,* 276 N.Y. 427, 12 N.E.2d 532 (1938). In the Farmington Academy decision the court utilized the pledgor's knowledge and the town's reliance to enforce the pledge, reasoning:

> "... he was an inhabitant of the town, and must have known of the erection of the building; and he actually advanced some part of the materials, excusing himself from paying the whole subscription only on the ground of his inability at the time. This was sufficient to justify the trustees in proceeding to incur expense, on the faith of the defendant's subscription;"

*Id.* at 175. Similarly, in *Robinson v. Nutt,* 185 Mass. 345, 70 N.E. 198 (1908) the court also found that the church relied upon the promised pledge, in addition to finding legal consideration in the additional pledges of others.

■ Based upon these principles, I believe it is firmly established Massachusetts law that an action to enforce a charitable subscription is enforceable based on a consideration or reliance theory.

As in Massachusetts, most courts have enforced charitable subscriptions by struggling to find reliance or consideration. It may be more expeditious and appropriate to eliminate the technical requirements and simply enforce pledges as a desirable social policy. In this vein, the Restatement of Contracts, Section 90, provides that a charitable subscription is enforceable without

proof of reliance. Although the Restatement position is an improvement over the current need to satisfy the technical requirement, Massachusetts has not adopted this provision of the Restatement as law of this state, and it is necessary to apply current legal principles to the facts of the present case.

Whether viewed in terms of consideration or reliance, the charitable subscriptions made by Morton Shoe to CJP are enforceable under Massachusetts law, and, therefore are allowable claims in bankruptcy. The pledge document executed by Morton Shoe clearly indicates that by accepting the subscription CJP agrees to apply the pledged amounts in accordance with the charitable purposes set forth in its charter. This is sufficient consideration to support the promise. Moreover, it is clear that CJP substantially relies on the amount of pledged subscriptions in developing operating budgets, in making committments to beneficiaries, and in borrowing funds to make payments to recipients—all in reliance on the expected payment of outstanding pledges.

For these reasons, the claim of CJP in the amount of $20,000 is allowed.