## RICHARD WARREN *versus* GEORGE B. STEARNS.

Where the members of an unincorporated volunteer company in the militia subscribed certain constitutional articles, whereby they severally promised to pay to the treasurer of the company for the time being all fines and assessments which should become due from them to the treasurer or to the company, it was *held*, that an action by the treasurer against a member, to recover an assessment, could not be sustained, because there was no valid consideration for the defendant's promise, it not appearing that any money had been advanced or expenses incurred on the faith of such promise, and because, as the defendant was jointly interested in the funds of the company, the action involved the legal absurdity of a party's suing himself.

*Held* also, that fines incurred under the constitutional articles, (being different from the fines imposed by the militia laws,) stood on no better footing than the assessments, and could not be recovered by action.

THIS was an action brought by the plaintiff in his capacity of treasurer of the Independent Company of Cadets, against the defendant as a member of the company.

Warren
*v.*
Stearns.

The declaration contained a count in indebitatus assumpsit, on an account as follows : —

| | | |
|---|---|---:|
| 1831, Dec. 30, | For absence from drill . . | $2·00 |
| 1832, Jan. 4,   "   " | from parade . . | 5·00 |
| "   "   " | Assessment for caps . . . | 12·50 |
| "   May 1, | Absence from inspection . . | 4·00 |
| "   "  8, | Semiannual assessment . . | 3·00 |
| "   "   " | Fine for absence from meeting | 1·00 |
| | | $27·50 |

The second count sets forth a special undertaking of the defendant, entered into by his subscribing the constitutional articles of the Cadets, to pay to the treasurer of the company all fines and assessments which might become due from him, and averring that the fines and assessments specified in the above account had become due.

The action was commenced in June 1832, and was tried in the Common Pleas, at October term 1834, before *Williams* J.

At the trial, which was upon the general issue, it was proved or admitted, among other things, that the Cadets are an ancient military corps, enjoying, by virtue of a resolve of the legislature and by long established usages, peculiar privileges ; that the company is organized as a battalion, is not attached to any regiment, and is subject to be ordered out by the governor alone, whose body guard it is, and by the major general on occasion of division reviews ; that the present constitutional articles of the corps were adopted in 1825 ; that the defendant became a member and subscribed the constitutional articles, in May 1827 ; that the plaintiff was not, at that time, the treasurer of the company, but was chosen to the office in September 1831, in the place of the defendant, and continued in office until May 1833, when he resigned and J. H. Blake was chosen in his place ; and that Blake resigned in February 1834, and the plaintiff was then reëlected and continues still to be the treasurer.

The resolve above mentioned empowers the governor to commission the captain of the company with the rank of lieutenant colonel, the lieutenant and ensign each with the rank of major, and an adjutant with the rank of captain.

The constitutional articles provide, in article 4th, that imme-

diately after the admission of any person as a member of he company, he shall subscribe the constitutional articles, and that " he shall procure a uniform according to the present or future regulations for the same, within thirty days after his admission." Article 8. " For the better management of the finances of the company, there shall be chosen from time to time, a treasurer, whose business it shall be to collect all fines and assessments, to liquidate all legal demands, . . . . . to receive and be accountable for all moneys and property collected by fines, assessments or otherwise, and in general to manage all the financial concerns of the company ; " &c. Article 13. " If the measures before provided by this constitution for the collection of fines and assessments, are found insufficient, it shall be the duty of the treasurer, (unless otherwise ordered by the commanding officer,) on every twenty-sixth day of October, and at such other times as he may be ordered, to institute a suit against all delinquents ; and the subscribers hereto, do hereby severally authorize him to institute a suit therefor in his own name. And we do severally promise the treasurer of the company for the time being, to pay him all fines and assessments which are or may become due, from us to him, or to the company, by these or any other constitutional articles."

It appeared, that in November 1831, the company adopted a new uniform, and voted that the requisite number of caps, at $ 11·50 each, should be procured ; and that the defendant was present at the meeting and did not object to this measure. In pursuance of the vote thirty-six caps were purchased, which were paid for by the treasurer out of the funds of the company. A paper as follows, signed by the defendant and others, was also read in evidence : " We, the subscribers, members of the Independent Company of Cadets, approve of the pattern uniform as exhibited ; the cost of which is to be as follows ; coat completely trimmed, $ 15 ; pantaloons trimmed, $ 6 ; cap, $ 10."

The evidence in the case was submitted to the jury, with instructions from the judge, that the constitutional articles signed by the defendant were a valid agreement, and that under it the plaintiff, as treasurer, could well maintain an action, in his own name, against the defendant, for such fines and assess-

ments as might become due from him by virtue of those arti-
cles ; that the fines charged to the defendant were not penalties
incurred by him under the militia laws of the Commonwealth,
to be sued for under those laws by the clerk of the company,
but were in the nature of a debt, which, by subscribing the
constitutional articles, he had assumed and contracted to pay ;
that although the plaintiff had, since the commencement of this
action, resigned his office of treasurer, yet as it did not appear
on the record that the fact had been moved or pleaded in
abatement, and as he had since been reëlected and still contin-
ued to be the treasurer, the suit was not abated, but the plain-
tiff might still prosecute it ; that the assessment for a cap could
not be recovered as an assessment made by virtue of any of
the constitutional articles, but that the plaintiff, in order to re-
cover, must show some other authority from the defendant to
make that expenditure on his account ; that if they were satis-
fied that the defendant had, either expressly or impliedly, au-
thorized that expense to be incurred on his account, in the
manner in which it was incurred, he would be liable to refund
and the plaintiff would be entitled to recover the sum so ex-
pended.

The jury returned a verdict for the plaintiff for $ 24·51.

The defendant filed his exceptions to the instructions of the
judge.

*March 7th,*
1836.

*W. J. Hubbard* and *Watts,* for the defendant.

*Gardiner* and *English,* for the plaintiff, cited *Radenhurst*
v. *Bates,* 3 Bingh. 463 ; *Davies* v. *Hawkins,* 3 Maule &
Selw. 488.

*April 3d,*
1837.

SHAW C. J.   The Court have been strongly inclined to
support this action, if practicable ; but upon the fullest consid-
eration we are of opinion, that it cannot be maintained.

The action is founded upon certain articles of association,
which, upon the admission of members into the corps of
Cadets, are signed by them individually.   The difficulty in the
case arises from an attempt made to enable an association of
individuals, frequently shifting and changing, to have the rights
of succession, and other attributes of a corporation.

It is conceded that this association are recognized and
properly considered as a part of the militia of the Common-

wealth, and as such are subject to the laws made for governing the militia.

But we think there is no doubt, that a body of men, liable to all the laws of the Commonwealth as militia men, may nevertheless enter into agreements and contracts, which, if made in due form and upon good consideration, will be effectual in law, provided they are not made in contravention of the laws binding upon them as military men, or otherwise repugnant to the laws of the Commonwealth. Such associations are not only lawful, but in a high degree praiseworthy. But when courts of law are called upon to enforce such agreements, instead of their being carried into effect as honorary engagements, it must be done upon those principles, which govern courts in relation to all other contracts. This is an action of assumpsit, and the plaintiff must show a valid promise, made upon a good consideration, to maintain it.

In the first place, we think it very clear, that the plaintiff cannot recover for the cap, being part of the account, for the plain reason that there is no clause in the constitutional articles, authorizing an assessment for caps, or other articles of uniform, and therefore there is no promise to pay the plaintiff. The only promise relied on is the express promise contained in the 13th article, to pay the treasurer all fines and assessments, and authorizing him to sue for them. If it be said there was evidence to show an express agreement on the defendant's part, to pay for this cap, it is answered, that that agreement was not a promise to the plaintiff, but to the other members of the company. And if it be still insisted on, that it was paid out of the funds of the company, it is answered, that this would only give the company a right to sue, and then the plaintiff would be met by another difficulty, that the defendant himself, as one of that company, was jointly interested in those funds, and it would involve the legal absurdity of suing himself.

As to fines, considering them, as the term imports, as in the nature of punishment for some dereliction of duty, it would be extremely difficult to support the claim. Treating this as a voluntary agreement of these parties, casually associated as members of a militia corps, but entering into stipulations with each other, such a recovery and payment of fines, would by

7*

no means be a substitute for the fines imposed by law, for neg lect of military duty, or exempt them from their liability under the general law.

The most that can be said in support of them is, that they are in the nature of assessments which the members of the company mutually agree with each other to pay, for the common use and benefit of the whole, upon the happening of certain contingencies, such as absences from drills, parades, &c. An agreement to pay like sums upon any other contingencies, not involving any fault or breach of duty, would be equally obligatory, depending solely upon the effect and terms of the promise, and the sufficiency of the consideration. But it is not necessary to pursue this distinction further, because we think that they cannot be placed upon a higher footing than assessments, and that for assessments this action will not lie.

It is not easy in a short compass to state all the grounds, upon which this opinion has been formed.

In the first place it is very obvious, that the original apparent intent of these articles of association, cannot legally be carried into effect, in the manner and upon the principles contemplated by the articles themselves. It seems to have been contemplated, that the treasurer for the time being should be the trustee for the company, in relation to all their fiscal concerns, with power to collect all fines and assessments, for the use of the company, as well those which accrued before they were appointed to that office, as those which should accrue whilst they are respectively in office. In other words, that the treasurers for the time being respectively should take in succession.

But it is a well settled rule of law, that no person can take in succession, or maintain suits as successors, unless corporations or the officers of corporations, or persons specially authorized by law, as judges of probate, deacons of churches, and a few others. If therefore the promise can be considered as made to the treasurer alone, by signing the constitutional articles, it is made to him in his natural capacity, the right of action must be considered as vested in him personally, and in case of his death, must vest in his executor. Suing as treasurer is only as *descriptio personæ*, and as showing the use to

which the moneys are to be appropriated, when recovered. The circumstance therefore of the resignation and reëlection of the plaintiff, can make no difference in the present case. If the right of action once attached, it was not lost by a resignation.

Again, it is manifestly the intent of the constitutional articles, that the treasurer, to whom the promise is made, and who is authorized to sue delinquents for fines and assessments, is to be a member of the company, and subject to the orders of the officers. It is made the duty of the treasurer to institute suits, unless otherwise ordered by the commanding officer. The suit is to be commenced under the directions of the officers of the company, and it may be fairly inferred that it is to be prosecuted and conducted under their directions and at the expense of the company. Yet whenever a cause of action has accrued, by incurring a fine or by non-payment of an assessment, a right of action vests in the treasurer personally, he retains it when he goes out of office and ceases to be under the orders or control of the officers ; in case of his death, it goes to his executors, who never were under their orders, and it is to be prosecuted at their own expense, because they are not keepers of the cash and funds of the company.

Again, the promise is in terms to the treasurer for the time being, to pay all fines and assessments. A breach occurs by the non-payment of a fine or assessment, and a personal right of action accrues. The action however is delayed, by order of the commanding officer or otherwise, and the treasurer goes out of office, having such cause of action, or dies, by which it vests in his personal representative. A new treasurer is chosen in his place. Who shall collect the delinquent fines or assessments ? The right of action is in the past treasurer or his executor, and yet the provision is that the treasurer for the time being has power to collect all fines, &c.

Would a voluntary payment to the new treasurer defeat the right of action vested in the past treasurer ? If it would do so before action brought, would it have the same effect, whilst the action is pending ?

It is probable that the parties to this association considered it as a promise to the treasurer for the time being and his suc-

cessors in that office ; but such a promise, as a promise to successors, clearly cannot be supported.

But there is great difficulty in considering this as a promise by the defendant to the present plaintiff.  The present plaintiff was not the treasurer, when the present defendant signed the articles in 1827 ; on the contrary, the defendant himself was treasurer at that time or at some time afterwards, because it is found that the plaintiff succeeded to the defendant as treasurer by his election in 1831.  The promise therefore when made, was not made to the plaintiff.  But it was a promise to the treasurer for the time being.,  If this is to be considered as ambulatory, and to be applied from time to time, to each successive treasurer when chosen, we know of no principle of law, which can give effect to such a promise.

The case of *Radenhurst* v. *Bates*, 3 Bingh. 463, cited in the argument, was a mutual promise made by several coach owners, each to the other, to pay certain penalties as liquidated damages, and it was agreed that one should sue for the benefit of the rest.  But there all were parties to the agreement at the time it was executed, and the sum when recovered was to enure solely to the benefit of those who had incurred no penalty.  In this case, if the treasurer for the time being could recover the money, he would recover it not to his own use, nor to the sole use of the other members of the company, but to the use of them jointly with the defendant.  It comes back therefore to a promise to pay. to the treasurer to the use of the defendant and others, and he himself has just the same interest in it as the other members of the company.

And it seems equally difficult to find any good consideration to maintain this promise.  Where a promise has been made to a person or a body capable of suing, and they upon the strength of such promise, before it has been revoked, have advanced money or incurred expenses, this has been held a good consideration for a promise.  *Farmington Academy* v. *Allen*, 14 Mass. R. 172.  That case was decided expressly on the ground, that the defendant had become liable as upon an implied promise for money paid, the plaintiffs having expended money on the faith of his promise.  But it was held in the same case, that a declaration on the express promise contained

ın the subscription paper, could not be maintained, because there was no legal consideration to support it. So in *Gilmore* v. *Pope*, 5 Mass. R. 491, an express promise to one to pay to the use of a turnpike company such assessments as should be laid on the promisor's shares, would not maintain an action in the name of the promisee and agent of the company. But it does not appear in the present case, that the treasurer or the company have incurred any expense upon the faith of this promise.

Upon these views of the case the Court are of opinion, that the action cannot be maintained, that the instructions given to the jury cannot be supported in law, and that the judgment of the Court of Common Pleas must be reversed.

*Judgment for the defendant.*