## Case No. 2,392.

### CAPELLE v. TRINITY M. E. CHURCH.

[11 N. B. R. (1875) 536.] [1]

District Court, D. Delaware.

FOLLOWING STATE DECISION — LIMITATION OF ACTIONS—CHURCH SUBSCRIPTION—VALIDITY—CONSIDERATION.

1. The construction given by the state courts to the state act of limitations recognized and enforced by the United States bankrupt court.

2. The bankrupt having been a non-resident at the time the cause of action accrued, and it not appearing by the proof when he became a resident of the state, nor that he had resided more than three years in the state since the cause of action accrued, although the creditor was a corporation of another state, *held*, that the state act of limitations could not be allowed as a defense to be set up by the assignee.

3. A claim was proved by a church corporation, founded upon a verbal promise by the bankrupt to M., that he (the bankrupt) would pay eight hundred dollars if M. would subscribe a portion of the indebtedness due from the church to M., the promise being subsequently publicly announced by the bankrupt in the church, in the presence of the congregation; it appeared by the proof that expenses had been incurred by the trustees of the church, upon the faith of the subscriptions generally, though not that any definite expenditure was made upon the faith of this particular subscription. *Held*, that the promise was founded on a good legal consideration, upon two alternative grounds: First, it was one of two mutual promises for the benefit of the church. each being the consideration for the other, and the claim provable by the beneficiary; and. secondly, that as a promise to the church, partly upon the faith of which expenses were incurred, it would sustain an action of assumpsit, and might be proved in bankruptcy.

[Cited in Sturgis v. Colby, Case No. 13,574.]

Petition by [George S. Capelle] assignee [of Jacob Sinex] to have the claim filed [by the Trinity M. E. Church of Chester] expunged.

Geo. H. Bates, for petitioner.
Geo. M. Pardoe, for respondent.

BRADFORD, District Judge. The questions to be decided in this case come up on the hearing of a rule to show cause why a certain claim of the Methodist Church, in the city of Chester, in Pennsylvania, called "The Trinity M. E. Church of Chester," should not be stricken off from the list of claims proven, and declared void. The reasons given are two-fold: First, it is alleged that the debt was barred by the statute of limitations, of this state, and could not be enforced if suit were brought thereon within the jurisdiction of this state; and, secondly, that there was no valid legal consideration for the claim, which would be necessary to be established in an action of assumpsit brought for its recovery.

George E. Capelle, the assignee in bankruptcy of the bankrupt Sinex (adjudged bankrupt on his own petition), moves the court in this matter, by petition, to have this claim stricken off, under the last clause of the 22d section of the bankrupt act [14

Stat. 528], which is in these words: "The court may, on the application of the assignee, or of any creditor, or of the bankrupt, or without any application, examine upon oath the bankrupt, or any person tendering, or who has made proof of claims, and may summon any person capable of giving evidence concerning such proof, or concerning the debt sought to be proved, and shall reject all claims not duly proved, or when the proof shows the claim to be founded on fraud, illegality, or mistake." From the evidence in this case it appears that in the month of February, 1867, the bankrupt Sinex had a conversation with the witness David McGinniss, who was then engaged, or about to be engaged, in plastering the vestibule of said church, concerning a subscription of money for the use of the church. That the result of this conference was an agreement and undertaking, by both the witness and the bankrupt, to give certain sums of money, viz.: the sum of eight hundred dollars to be given by the bankrupt, and one-half the amount of a certain bill for plastering, due the witness from the said bankrupt, on account of work done on the said church building, to be given by the said witness, each at the time making the undertaking of the other, the consideration on which his own promise was founded. There was no subscription in writing, nor were the promises reduced to writing, at any time. Sinex was at that time treasurer of the church. The witness then held no official relation to the church. Afterwards, and it must have been very shortly afterwards, although the witness does not state the exact time, Sinex read aloud, before the assembled congregation, of whom the witness was one, the amounts subscribed by himself and the witness, with the subscriptions of others, repeating his own subscription as eight hundred dollars, five hundred dollars of which was to be set down as for himself and three hundred dollars for his wife. The witness proves that Sinex said, on the occasion of the public meeting, that the debt of the church (then amounting to the sum of twelve or thirteen thousand dollars) would have to be paid, and he would give eight hundred dollars towards it. On this occasion three or four thousand dollars were subscribed. It is proven by the witness that this subscription, together with others, were an inducement to the church to go on and finish their work, on the faith of which they did place a certain heater in their main building, and afterwards, on the faith of the said subscription, together with others, they did finish the main audience room. The witness is positive that this subscription of Sinex, among others, was often placed before the board of trustees as a basis of credit on which the heater in question could be procured. The witness also states that three years since he, with one Clara Fricke, went to Sinex for this subscription, and since then

[1] [Reprinted by permission.]

—about two years ago next June—made a demand of Sinex for this subscription. It is not stated what was his reply on either of these occasions, except that there was no denial of the claim, but, as I recollect the testimony, a plea of inability to pay at that time. The subscription was in February, 1867. At that time the church was a corporation, incorporated under the laws of the state of Pennsylvania, and the bankrupt was a citizen of the same state, and it does not appear that he was a resident of this state for the period of three years before the cause of action accrued. These are the material facts disclosed by the evidence in reference to the debt or claim sought to be stricken off and declared void.

First. In reference to the operation of the statute of limitations, as applied to such a contract as that proven (supposing it to be such an one as gives a valid cause of action by reason of being founded on a sufficient consideration), I am of opinion that the assignee cannot avail himself of the defense of the statute of limitations to this claim. The United States courts are solicitous to conform to the decisions made by the state courts in construing the laws of the state, and among them the acts of limitation. By the 34th section of the judiciary act of September 24, 1789, "these acts of limitation form a rule of decision in the courts of the United States, and the same effect is given them as is given in the state courts." "We are bound," says Mr. Justice Catron in [Harpending v. Reformed Protestant Dutch Church] 16 Pet. [41 U. S.] 455, in delivering the opinion of the supreme court of the United States, "to conform to the decisions of the state courts of the state of New York in the construction of these acts of limitation." Now, the court of errors and appeals of the state of Delaware has given an elaborate judgment on the very point raised in this case; and, as the lex fori governs in all cases in the application of the acts of limitations, this court will be guided by that decision. The case is Wells v. Jones, 2 Houst. 329. It was there held that where the defendants making promissory notes resided out of the state at the time the cause of action accrued, and never became residents of this state, the act of limitations did not run against them, although the plaintiffs themselves always were non-residents. That the statute of limitations does not commence to run against any one residing out of the state at the time of the accruing of the cause of action, and only commences on the entry of such person into the state as a resident. The court gives a construction to the 14th section of chapter 123 of the Revised Code, and particularly to these words, as governing the case before them, i. e.—"If at the time when a cause of action accrues against any person, he shall be out of the state, the action may be commenced within the time hereinafter limited therefor, after such person shall come into the state in such manner that, by reasonable diligence, he may be served with process;" and lays down the position that in no case shall the statute of limitations run against one who was non-resident at the time of the accruing of the cause of action until he comes into the state under the circumstances described in the section cited. As Sinex was a non-resident at the time of the accruing of the cause of action, and it does not appear when he became a resident of this state, and, consequently, as it does not appear that he has resided in this state for a period more than three years since the accruing of the cause of action, his case comes within the exception of this statute, and I must declare that such act of limitation cannot be allowed as a defense by the assignee against this claim.

Second. Was there such a valid consideration as would support an action of assumpsit if one were brought to recover this subscription? It will be noticed—1. That this contract was not reduced to writing. There was no subscription-book or other written entry or promise, but it rested wholly on verbal statement. 2. There was no time fixed for the performance of the contract or the payment of the money. 3. There was no executed consideration from the church to the promisor at the time of making the promise; but the consideration expressed was the agreement between Sinex and McGinniss that each would give money for the use and benefit of the church (a common object of interest to the parties) on the express condition that the other would do the same. And it also appears that McGinniss, before the filing of the claim, has paid his subscription. 4. It is proven abundantly that the church, on the faith of this subscription among others, did incur additional expense and charges, although it is stated by the witness that he does not know that any expense, or undertaking, was encountered or begun on the strength of this subscription alone.

1. I am not aware that there is difficulty in the way of recovery, were this proceeding in the form of an action of assumpsit, from the fact that this contract is not reduced to writing. All parol contracts are of equal dignity, whether reduced to writing or not, and are equally enforceable in courts of law, unless they are made void on some grounds of public policy. The statute of frauds of our state makes void any "agreement that is not to be performed within the space of one year from the making thereof." But the proper construction of this statute is that the contract or agreement must expressly show that it was not to be performed within a year from the making thereof; and as there was no allusion to the time when this subscription was to be paid, such a verbal contract is not made void by our statute of frauds. This contract may be looked upon as a parol agreement by Sinex, with McGinniss as the promisee, to pay a certain sum of money to the corporation, or for the use of the corporation; or it

may be considered as a direct promise made by Sinex to the corporation (if there were at the time any person or persons authorized to receive such a proposition on behalf of the church) to pay the amount of his subscription to them for their own use and benefit. It is claimed by the assignee that this contract is nudum pactum—that is, absolutely void, by reason of there being no valid consideration for the promise. Undoubtedly, consideration is of the essence of every contract. Where the contract is under seal, consideration will not only be presumed, but cannot be denied by the party to the seal, unless in cases of fraud. Where the contract is in writing, but not under seal, to pay money, consideration will be presumed, but may be rebutted by the party to be charged with the payment. Where the evidence of the contract rests altogether on verbal statements, there the consideration must be affirmatively established by the plaintiff, or there is no proof of the contract, as the consideration constitutes the essence. Treating McGinniss, then, as the promisee, and Sinex as the promisor, what was the consideration for Sinex's promise? Very clearly, and distinctly, and expressly, it was the promise of McGinniss to pay a sum certain as his subscription—a promise for a promise—a consideration executory at that time, but fulfilled and executed long before the filing of this claim. This was, without doubt, a valid promise of Sinex's, and founded on a good consideration. A loss sustained by the plaintiff, or, in such a case as this, by the promisee, as an inducement to the promisor to make the promise, is as good a consideration on which to found a promise as an advantage conferred upon the defendant by the plaintiff or promisee. Addison on Contracts (page 22) says: "But if the contract has been executed by the performance of the act forming the consideration for the promise, then it is no answer to an action to say that the plaintiff was not, by the terms of the original contract, bound to do the act, and that there was consequently no mutuality of obligation."

The right of the party benefited by the promise to the fruits of an action are sustained by numerous authorities, ancient and modern, English and American. "Upon a promise to the father to give so much with his daughter in marriage, the daughter may have the action, for she is the meritorious cause." Com. Dig. p. 206, "Action on the case upon assumpsit," E. "Upon a promise to B. to pay twenty pounds to an infant at his full age, and to educate him in the meantime, the infant shall have the action." Id. "If the heir promise his father, who intended to cut down timber for the portion of his daughter, to pay so much for her portion if he will not cut it, the daughter shall have an assumpsit against the heir." Id. "If a promise be made to A., upon payment of fifty pounds, to reassure land to B., the assumpsit may be by B." Id.; Pigott v. Thompson, 3

Bos. & P. 149, and cases there cited. So in Marchington v. Vernon, 1 Bos. & P. 101, note, Buller, Justice, says: "If one person makes a promise to another for the benefit of a third, that third may maintain an action upon it." Chief Justice Gibson recognizes the principle, but draws the distinction between parol contracts and contracts under seal, and quotes from the ancient authorities. Uhland v. Uhland, 17 Serg. & R. 268. Hind v. Holdship, 2 Watts, 104, is a modern authority directly in point, in which not only is the right to the fruits of an action given to the one having the beneficial interest, but the action is in form brought by him. So in Stewart v. Hamilton College, 2 Denio, 403, Chancellor Walworth holds to the right of action in the party having the beneficial interest. To these might be added a multitude of authorities to show the legal interest a person has who is not the promisee in a simple contract, but who takes the beneficial interest under and by such contract. It is admitted, however, that there is a conflict of authority in England as to who shall appear as plaintiff on the record in a court of law, and Mr. Brown, in his book on "Actions at Law," page 102, says, "It is now undoubted law that an entire stranger to the consideration cannot sue upon a parol contract." Yet the same author, on page 104 of the same work, says, a "servant or agent may sue on a contract entered into by him as such, when he has a beneficial interest in its completion in regard to commissions or otherwise, or a special property or interest in the subject-matter of the agreement." That is, in other words, a person who has no right of action because the contract was not made with him individually but in his representative capacity, may, if he has a beneficial interest in the completion of the contract, or a special property or interest in the subject-matter of the agreement, sue in his own name. Now, this church has the special interest, in the subject-matter, of being entitled to all the money to be paid, and has a beneficial interest in the completion of the contract, to the extent of the amount of the subscription to be paid. It would appear, then, that this case does not come within the class of cases where, by the preponderance of authority, the plaintiff must be the party from whom the consideration flows. Supposing, however, it does, with divided authorities in England, I prefer to follow the decisions of our own country, of Chancellor Walworth and the supreme court of Pennsylvania, for I know of no American decisions to the contrary. And even if all the authorities gave the right of action in a court of law to the promisee in this case, viz., McGinniss, from whom all the considerations flowed, as long as the church is to be considered as the cestui que trust of the fund, and the claim is proved by the properly constituted officer of the church, and the court in bankruptcy deals with these cases upon equitable principles, I should not have the claim

stricken off because it had been proven by the treasurer of the church instead of the promisee, Mr. McGinniss.

Viewing this case, therefore, as presenting a contract by Sinex with McGinniss, to pay to the church eight hundred dollars, on the consideration (then executory, but afterwards, before proof of claim, executed) of McGinniss paying the amount of his own subscription, I have come to the conclusion that the contract was a valid one, founded on a legal and sufficient consideration, enforceable in the courts of law, and to be allowed by this court. And here I might rest this opinion, but as there is another ground on which this subscription, in my judgment, may be upheld, and as the case is interesting and important, it may be well to examine the second view (already noticed) which may be taken of this contract, viz., a contract directly with the church, by Sinex, the bankrupt.

The first question which arises is, was any promise made by Sinex to, and accepted by, this corporation? A corporation acts and contracts through its agents. The trustees of this church were legally competent to receive a gift of money for the use of the church. They were equally competent to accept a promise to give money. Was any such promise given to, accepted by, and acted on, by the said trustees? I think the evidence conclusively shows such to have been the case. The promise, after divine service, in full assembly of the members of the church, Sinex reading aloud the amounts of his own with other subscriptions; the prompt action of the trustees of the church in making this subscription the basis of credit in improvements for their building and placing a heater therein; the virtual admission by Sinex of the claim of the church against him for this subscription, in the interviews afterwards had between him and McGinniss, in relation to this matter, all establish the proposition that a promise was made to, accepted by, and acted on, by the trustees of this church. Now, was this promise binding on the promisor? It is claimed by the assignee that it was not, and for the reason that it was without any legal consideration. I think that there was such legal consideration, and consequently that the said promise was binding. A promise made and not revoked (which is an open and continuing promise until revoked), accepted, and acted upon by the promisee to the extent of incurring expense by the promisee, on the faith of the performance of the promise by the promisor, is a valid promise, and sustained by a valid consideration, viz., a loss sustained by the plaintiff, and no authorities need be cited to show that this is as valid a consideration to support the promise as an advantage gained by the defendant as a consideration for this promise. A parol promise, then, made to a church to pay a certain sum of money as a subscription for the use and benefit of the church, accepted and acted on by way of in-

curring expenses and increasing the liabilities of the church, is a valid promise, and enforceable in the courts of law. This proposition is sustainable by reason and authority. No doubt, a mere subscription standing alone, whether followed by the giving of a promissory note or not, is not binding, there being no consideration for the promise. In Boutell v. Cowdin, 9 Mass. 254, this was the case (a note having been given for the amount of the subscription). In Phillips Limerick Academy v. Davis, 11 Mass. 113, there were subscriptions, but no note given. The court in this case said there was no valid consideration, but also says, "It is a promise to give, connected with a similar promise by others to give to the same appropriation and purpose, but these promises are not mutual among the subscribers, so as to make the promise of one, or the performance of it, a consideration for the promise of another."

So that the inference in this decision is, that there would have been a valid consideration had the promise of one been made the consideration of the promise of the other (an authority sustaining the view treating this contract as one between Sinex, as the promisor, and McGinniss, as the promisee). In Farmington Academy v. Allen, 14 Mass. 172, the subscription is held valid because the defendant recognized or re-acknowledged, his promise by contributing work, and also knew that expenses were incurred by the said corporation, on the faith of the subscriptions on the building; and thus, in the opinion of the court he ought to be considered liable, on the common counts, for money paid and expended, at his request, to the extent of his subscription. In this case there is an element which does not exist in ours, viz., contribution to the work by the defendant as a part payment of his subscription (the necessity for which we shall hereafter consider). But before this last decision, in the case of Holmes v. Dana, 12 Mass. 190, it had been decided "that where sundry persons agreed to lend to the editors of a newspaper the sums set against their respective names, the same to be paid to one of their number as agent, and this agent advanced moneys to the editors on the ground of the subscription, he had a right of action against the subscriber who refused to pay the sum he subscribed." In this case, the court says: "The true ground of the action is that by reason of the contract, Larkin (that is, the agent) was led to confide in the engagement of the defendant so far as to advance his own money for him; and the defendant and the other subscribers having made Larkin the trustee to receive and appropriate the money for objects of importance to them, were bound in equity and good conscience to restore it. The only question which could arise in this case was whether Larkin was induced to advance his money by the subscription and by the confidence placed by him in the subscribers. The jury having so

found, the verdict is unquestionably right." There can be no difference in principle, because the money was to be paid in this case to a trustee of the subscribers' own choosing, instead of the cestui que trust,—and the case is directly in point as an authority to show that a promise otherwise voluntary, if accepted and acted on by the plaintiff to his own expense and loss, on the faith of the promise, is a valid promise in law and founded on a good consideration. It will be observed also that in this last cited case, there is nothing said about re-acknowledgment on the part of the subscribers, Bridgewater Academy v. Gilbert, 19 Mass. 578, is an authority against the claimant. Trustees of Amherst Academy v. Cowls, 23 Mass. [6 Pick.] 427, is a case in point, and establishes (after reviewing all the cases) the general proposition that the promisor shall be bound when he stands by and sees a corporation undertake obligations which can be enforced against it on the faith of his promise. In the course of a long opinion Judge Parker says: "If by means of his contribution or his solemn promise to pay, the body to whom he has pledged his word should incur expense, become under legal obligations, or otherwise pursue the purpose and intent of the legislature in granting them the charter, this is a sufficient legal consideration to support such a promise. In this respect the principles of common honesty cannot be at variance with the law of the land; and no case from English or American reports has been cited to warrant so unjust a principle." Now in this case there was a note, and that note expressed on its face that it was for value received, and also recited the subscription made a year before. Yet it was admitted that all this did not prevent the defendant from setting up want of consideration; but the court said: "But it is quite sufficient to create a consideration, that the other party, the payee, should have assumed an obligation in consequence of receiving the note (in our case in consequence of receiving the verbal promise), which he was compellable at law or equity to perform, unless the promisor should be able to show when sued that the payee had refused, or was unable or had unreasonably neglected to perform the engagement on his part, in which case a defense might be raised on the ground of a failure of consideration." In Trustees of Church in Pembroke v. Stetson, 22 Mass. [5 Pick.] 506, it is held distinctly "where members of a religious society, which had a ministerial fund in the hands of an incorporated board of trustees, voluntarily subscribed to increase the fund, and afterwards gave their promissory notes to the trustees for the amount of their respective subscriptions, it was held that the notes were founded on a sufficient consideration." And in this case, Parker, Justice, comments on the case of Boutell v. Cowdin (cited first by the assignee's counsel), and ob-

jects to the construction which has been placed upon it, as not having been intended at the time. In Warren v. Stearns, 36 Mass. 80, cited by assignee's counsel, Chief Justice Shaw says, in the course of his opinion, "where a promise has been made to a person or a body capable of suing, and they upon the strength of such promise before it has been revoked, have advanced money or incurred expense, this has been held a good consideration," and quotes Farmington Academy v. Allen, 14 Mass. 172, as sustaining this position, and further says, "this case was decided expressly on the ground that the defendant had become liable as upon an implied promise for money paid, the plaintiff having expended money on the faith of his promise." In Trustees of Williams College v. Danforth, 29 Mass. [12 Pick.] 541, although the case was not similar in the facts to this, Chief Justice Shaw upholds the validity of the subscription and says, "the subscription, in the first instance, was in the nature of a proposal to the College, by its terms not binding until accepted and before acceptance revocable." This doctrine of the promise standing open until revoked, and, when accepted, binding the voluntary promisor, is also referred to in Thompson v. Page, 42 Mass. [2 Metc.] 568.

I think, on the whole, that the result of the authorities in Massachusetts is that a parol promise to the trustees of a church or religious society, not revoked until after the church, on the faith of that promise, has incurred expenses and subjected itself to new liabilities, is a valid promise, and founded on a good and sufficient consideration. I have seen no case reported where the contract to give was not reduced to writing; but, I repeat, where no statute requires such contract to be in writing, it is of equal dignity and of equal binding force, if a consideration is proven, as if it were reduced to writing under seal. In McAuley v. Billenger, 20 Johns. 89, the court sustains the principle that where a subscription is made, and the subscriber permits the trustees of the church, or the persons having the beneficial interest in the promise, to undergo expense on the faith of that promise, such subscription is binding. In Stewart v. Hamilton College, 2 Denio, 403, in the court for the correction of errors, in the state of New York, the following propositions, among others, are established and announced by Chancellor Walworth: "The agreement of a single individual to make a donation of money to a literary or religious institution, without any undertaking on the part of the donee to do anything," is not of binding force. "But when several persons subscribe to raise money for an object in which all feel an interest—e. g., to support a religious or literary institution—the mutual promises of the several subscribers form a valid consideration for the promise of each." And "the party for whose benefit such subscriptions

are made may maintain assumpsit against the several subscribers, although such party is not connected with the consideration."

It will be observed that in the case which we are examining the mutual promises were more distinct, as the one was made the express condition of the other, and, further, that the condition has been executed by McGinniss, so that the chancellor's reasoning applies to this case a fortiori. It is also to be observed that it is high American authority for the bringing of an action, and consequently the proof of the claim by the party beneficially interested in the promise, although no consideration springs from him. Mr. Parsons, in his book on Contracts (volume 1, p. 378), adopts this proposition: "Where advances have been made, or expenses or liabilities incurred by others, in consequence of such subscription, before any notice of withdrawal, this should, on general principles, make them obligatory, provided the advances were authorized by a fair and reasonable dependence on the subscriptions; and this rule seems to be well established." Addison, in his excellent work on Contracts (page 22), says: "But in these cases, and in all cases where there is no mutuality of contract and obligation, there is nothing to bind the party to the continuance of his promise so long as nothing has been done upon the faith of it;. and the party making the promise or giving the undertaking may, at any time before it has been accepted and acted upon, and any portion of the intended consideration been accomplished, retract such promise or withdraw such undertaking, and place himself in the same situation as if it never had been made." Hind v. Holdship, 2 Watts, 104, cited by counsel for the church, is not the case of a subscription, but is direct authority showing the right of the party beneficially interested in the promise to bring suit, although a stranger to the consideration; and Uhland v. Uhland, 17 Serg. & R. 268, quoted in Watts, is the authority from Chief Justice Gibson for the right of the party beneficially interested in the promise to bring suit, although, not the promisee, and a stranger to the consideration. In Caul v. Gibson, 3 Barr. [3 Pa. St.] 416, Judge Burnside lays down broadly the binding force of these church subscriptions as settled law. In Norton v. Janvier, 5 Harr. [Del.] 346, Judge Booth rules in favor of the binding force of these subscriptions. In this case the subscription was made upon a condition that a certain amount should be raised by subscription or otherwise for the payment of the debt of the church; and the court held that the performance of the condition was a sufficient consideration. I know of no other case in Delaware. There are some cases cited from Vermont and New Hampshire, which I regret not being able to obtain. I think the clear result of the authorities in New York and Pennsylvania is

that a promise to give funds to a church for church purposes, or other religious or charitable institutions, not revoked until after the church or other institution, on the faith of the promise, has incurred new expenses and new liabilities for objects and purposes within their proper sphere of action, is a valid promise, and founded on good and sufficient consideration. Standing by and permitting this new expense and liability, incurred on the strength of his promise (if not alone, yet certainly on the strength of his promise aggregated with those of others), he is properly, from a legal position, and certainly equitably, on grounds of good morals and good faith, considered as liable for money paid to and for his use and at his request, which they have a right on the common counts to recover. Now, this reasoning, it will be observed, is on the supposition that this promise was made directly to the church. If, on the other hand, the true view of this contract is that of promise to Mr. McGinniss, founded on McGinniss' mutual promise to subscribe, and that promise was (as is proved) executed, then there is proven full and ample consideration, and all the nice distinctions founded on the sufficiency of consideration which arise in the former view of the case are swept away.

The only question which now remains to be considered is, was there any condition to be performed by the church before they could claim the subscription, or was there the happening of any contingency upon which the right to make the claim was barred? If there was such condition to be performed, and by the fault of the church it was not performed, then there could be no just demand for this subscription, or if the contingency which, by the agreement of the parties, was to bar the claim, happened, then there could be no right of action. On one occasion Sinex said "the church was in debt, and he would give eight hundred dollars towards paying it." This does not appear to have been said on the special occasion of his promise to McGinniss; but it may be assumed, for the sake of the argument, that he desired his subscription, either in whole or in part, to be appropriated to the debt of the church. What then? Has he ever tendered the money to them for this purpose? and have they ever refused to apply it, thus tendered, to such a purpose? There is no evidence whatever of such a state of facts; there is no evidence that the church has paid all its debts; and there is none that, if the money is paid, the church will not apply every dollar to their payment. The subscriber who seeks to avail himself of this defense must show either that there was no debt to which the fund could be applicable according to the intention of the parties at the time of the subscription, or a refusal to apply the subscription money according to the intention of the parties. The evidence does not disclose either of these

states of facts, nor is there any proof that anything was to be done by the church other than what was done before demand of the subscription. Supposing Sinex's subscription was intended for paying off the church's existing debts, there is no proof that all, or the most of, these subscriptions were for that purpose; and the certain expectation of receiving eight hundred dollars to be applied to existing debt was an inducement and valid reason why necessary expenses should be in the future incurred, if within reasonable and proper bounds. So that, while Sinex's money was to be applied to existing debt, the agreement by him, to pay eight hundred dollars on account of it, operated in the same manner to induce the contracting of new necessary liabilities as if there had been no direction given by him for the application of his subscription.

I therefore allow the claim, and direct that the costs of the proceedings be taken from the funds in the assignee's hands.